255 A.2d 154.

STATE *vs.* DAVID W. KANDZERSKI.

JULY 8, 1969.

PRESENT: Roberts, C. J., Paolino, Powers, Joslin and Kelleher, JJ.

KELLEHER, J. The defendant was convicted by a superior court jury of assault with an intent to commit robbery. The trial justice denied the defendant's motion for a new trial and sentenced him to serve two years in the adult correctional institutions. The case is before us on several exceptions taken by the defendant to certain rulings made during the trial and to the denial of his motion for a new trial.

On March 19, 1965, at about 10:15 p.m., Joseph A. Butler, a resident of Providence, drove his automobile to his customary parking place, a garage at 21 Barstow Street. As Butler left his car and began to lock its doors, he heard footsteps to his rear. He looked up and saw someone walking up the driveway in the direction of the garage. Butler then returned to the task of securing his car. Within moments, the person walking up the driveway was at the entrance to the garage. He said to Butler, "Put up your hands, this is a stickup." Butler replied, "For God's sake, Dave, don't do it." He then heard a "click."

The person at the doorway came into the garage and struck Butler on the head about four times with an as yet unidentified instrument. The assailant fled. The victim, his clothing covered with blood, walked to his nearby home and notified a relative that he had been hit on the head

by defendant. The police were summoned and notified of the identification of the assailant. Butler was taken to Roger Williams Hospital where 15 stitches were taken in his scalp.

The victim testified that his assailant wore a dark three-quarter-length coat, dark glasses and a piece of white cloth which covered his mouth and chin. He steadfastly maintained that he had been assaulted by defendant. The defendant lived on Barstow Street as did Butler. They had been neighbors for over 10 years. Butler told the court and jury that he recognized defendant by his walk as he came up the driveway. He explained that there was a light burning at the rear door of the house located in front of the garage. Butler also declared that he recognized defendant's voice when the command was given to put up his hands.

The defendant offered an alibi defense. Testimony was offered to show that he spent the entire evening of March 19, 1965, from 7:30 p.m. on, at his sister's apartment in the Olneyville section of Providence—a considerable distance away from Butler's garage.

The first phase of defendant's appeal which we shall consider is his claim that certain identification procedures employed by the Providence police department amounted to a denial of his constitutional rights to due process. In making this argument defendant relies upon the holding in *Palmer* v. *Peyton*, 359 F.2d 199 (4th Cir. 1966).

In *Palmer*, a rape victim identified her alleged assailant solely on the basis of hearing his voice. The circuit court found that the techniques used by the police in *Palmer* were highly suggestive that they failed to meet " 'those canons of decency and fairness' " which have been established as part of the fundamental law of the land. While we recognize the rationale of the *Palmer* case, it is inapplicable in the circumstances of the instant appeal.

4

In *Palmer*, the victim never knew her assailant before the assault. She never viewed the accused while he was being detained by the police nor did she make an in-court identification of the defendant in any of the three trials held in that case. Here, Butler knew Kandzerski for a long period of time. They lived on the same street. He saw defendant walking in the neighborhood. Within minutes of the assault, he identified Kandzerski as his assailant. When the police picked up Kandzerski late Saturday evening, March 20, 1965, they took him to police headquarters. Butler was then brought to the station and into a room where Kandzerski was being detained. He told the officers that defendant was the one who had assaulted him the prior evening.[1] There was nothing suggestive in what the police did. The meeting between Kandzerski and Butler at the station was more of a confrontation than anything else. There was no need of any lineup or necessity of coaching the victim on the part of the police. The identification had been almost 24 hours earlier. The defendant's claim that his constitutional rights were violated at the police station is groundless.

In order that we might place the next exception in its proper perspective, we shall return for a moment to the evidence. The record shows that several of defendant's relatives were at his sister's apartment on the night of the assault. His father and his sister-in-law testified that they left the apartment before midnight. Each drove away from the apartment in his own motor vehicle. The defendant is a professed alcoholic. He declared that shortly after midnight, he and his mother left the apartment and the mother drove him over to a nearby bar so that he could buy a drink of wine.

When the jury was considering this case, it interrupted

---

[1] The police asked, "Is this the man that did it?" The victim answered, "Yes, that's David Kandzerski."

its deliberations, returned to the courtroom and posed the following written question to the trial justice:

> " 'The jury would like to know as to what car Mrs. Kandzerski (mother) used to drive David to the bar at 12:15 A.M. on March 20th.' "

The trial court responded to this inquiry as follows:

> "Mr. Foreman, ladies and gentlemen of the jury, with some reluctance the court must tell you that all you can consider is the evidence that has already been introduced. In other words, both sides have rested, and that means that we cannot accept any further testimony in the trial. Perhaps I would like an answer to the same question, but even the court cannot request that information, because, as I say, the attorneys determine what evidence they feel is important. They elicit that testimony by their direct examination or by cross examination. Once that is concluded then there is no further information that we can obtain.
>
> "Might I ask counsel—I know this to be the fact, but I want to be certain that there was no testimony as to what motor vehicle was used in that particular transportation. The reason I ask the question is that if there had been testimony and you couldn't recall what the testimony was, the court would then have the stenographer check her notes and read to you what that particular portion of the testimony is, but I have no recollection, and I know that there was no such testimony, because I'm going to say to you that I had the same questions in my mind during the course of the trial, but the court does not conduct cross-examination or direct examination, he simply sits and listens, in most cases, as you do. So that I must say that we cannot go into that phase of the case at this point, because the evidence is in and closed."

The defendant takes exception to these remarks because he claims the trial justice inferred that the defense had withheld material evidence. We think this alleged inference has no basis whatever in fact. A reading of the trial judge's reply shows that he was being completely factual and impartial in his answer. He stated that *both* sides

had rested, that the *attorneys* determine what evidence *they* feel is important and that they elicit testimony by *direct* or *cross-examination.* (emphasis ours) We can see nothing in this reply which would warrant any suggestion that the *defense* was concealing evidence. While the court observed that he entertained the same questions as that propounded by the jury, he quite properly told them that all it could consider was the testimony that had been elicited from the witness stand. The remarks of the court were correct and indicated no mistrust of either side.

The defendant's exception to the denial of his motion for a new trial is lacking in any specifics as to where the trial justice overlooked or misconceived any material evidence. It is clear from our review of the record that the court, like the jury, chose to believe Butler's declaration that he was positive defendant assaulted him. In denying defendant's motion for a new trial, the superior court remarked that "If the court had sat to make a determination without benefit of jury, the court's verdict would have been just as it was in the case of the jury verdict, namely, a verdict of guilty." In the circumstances, we cannot say that his decision was clearly wrong, and defendant's exception thereto is overruled.

Finally, we come to defendant's contention that the trial justice erred in allowing the prosecution to ask a number of leading questions. The defendant concedes that while each question in and of itself was not prejudicial, their combination adds up to prejudicial error. This contention baffles us for the following reasons.

In making this particualr argument, the defendant in his brief states that he is relying on exceptions nos. 15, 25, 79, 98, 129 and 145. An examination of the bill of exceptions shows that it contains 31 specific exceptions—all listed in consecutive numerical order, 1 to 31. This being so, it is impossible to have exceptions 79, 98, 129 and 145. Because

of our concern with the defendant's rights, we have attempted to associate the so-called exceptions with the exceptions set forth in the defendant's bill having in mind the so-called leading question issue. We can find but one question which fits the description and it was asked of the victim, a man of over 60 years of age, when he misunderstood a question asked by the prosecution. The question asked and allowed was a proper exercise of the trial justice's discretion. We therefore find no merit in the defendant's argument that he was prejudiced by the court's failure to sustain his objections to leading questions asked by the prosecution.

The defendant's exceptions which have been briefed and argued are overruled. Those neither briefed nor argued are deemed to have been waived and the case is remitted to the superior court.

*Herbert F. DeSimone,* Attorney General, *Luc R. LaBrosse,* Special Asst. Attorney General, *Donald P. Ryan,* Asst. Attorney General, of counsel, for plaintiff.

*James Cardono,* Public Defender, *John P. Toscano, Jr.,* Special Counsel to Public Defender, for defendant.