STATE

v.

Charles W. BASSETT.

No. 80–548–C.A.

Supreme Court of Rhode Island.

July 1, 1982.

---

Dennis J. Roberts II, Atty. Gen., Sharon P. O'Keefe, Sp. Asst. Atty. Gen., for plaintiff.

Pasco F. Loffredo, William Y. Chaika, Cranston, for defendant.

## OPINION

SHEA, Justice.

This case is before the court on appeal from the defendant's conviction by jury in the Superior Court for rape. Charles W. Bassett was sentenced to ten years in the Adult Correctional Institutions for a rape committed in the victim's home on May 4, 1979. On appeal the defendant raises three issues for our consideration. The first issue challenges the composition of the grand and petit juries because of the exemption that was allowed for the president, professors, tutors and students of recognized universi-

ties and colleges. The next issue involves alleged error in responses by the trial justice to questions posed by the jury after they had commenced deliberations. The final issue challenges the trial justice's denial of the defendant's motion for a new trial on the ground of newly discovered and formerly suppressed evidence. We affirm the conviction.

The evidence that established the rape came mainly from the testimony of the victim and of defendant. Although their respective testimony conflicted on several key points, principally on the question of consent, it is clear that sexual intercourse occurred. The complaining witness, a widow living alone on the second floor of her home in Providence, was sixty-eight years old at the time of the incident. She testified that she had known Charles Bassett, age fifty, for approximately twenty years. He had previously lived next door to her, and they maintained their acquaintance after defendant moved a street away because he took care of her yard work for her. The victim said that defendant began doing her yard work about 1976.

On the day of the offense, Friday May 4, 1979, the victim left home in the morning to go to her job as a teacher's aide. She began feeling ill because of a medical condition known as myasthenia gravis which, she says, results in weakness throughout her body and leaves her with very little strength. Two coworkers helped her home early, about noon. They helped her up the stairs, stayed with her for a few minutes, and then left her sitting on a couch in the living room. The victim testified that she then went into her bedroom to change her clothes whereupon she heard a knock at the door. She asked who was at the door and a voice responded, "Charlie." Knowing that she owed defendant $8 for yard work, she opened the kitchen door and let him in.

According to the victim a short conversation ensued in the kitchen, in part concerning her illness. At some point defendant offered to help undress her, to which she responded, "No, I'm capable of taking care of myself." Next, she stated that defend-

ant picked her up off the kitchen chair, carried her into the bedroom, laid her down on the bedroom floor, and removed all of her clothing except for her bra. The defendant then exposed himself and assaulted her. During the assault, the victim stated that she continually screamed, "Charlie, leave me alone," but that she could not physically resist because of the weakness caused by her medical condition and also by the fact that her arms were pinned against her chest. She testified that she then passed out only to wake up later "nude" on the floor. She put on her housecoat and slept in her bed until the next morning when she called the police.

Doctor Kathleen Bert, a gynecologist employed by the Rhode Island Group Health Association, testified that she examined the complaining witness on Monday, May 7. She found swelling in the vagina, tenderness in the lower abdomen, and an infection in the urinary tract and bladder. Doctor Bert stated that the trauma she observed was consistent with forced intercourse.

Charles Bassett testified on his own behalf. He stated that he had gone to the victim's house after work at about 5 p. m. to collect the money owed him. He admitted that he had offered to help undress her but claims that she responded that she did not think she could make it to the bedroom on her own. He said that he walked her into the bedroom and removed her clothing except for her undergarments. He said that she removed her own underpants thereby inviting defendant to engage in sexual intercourse. Also, he claims that during the act he told the victim that what they were doing was not right but claimed she replied that she would tell his wife if he did not continue. Nevertheless, the jury found defendant guilty.

■ We turn now to the first issue raised. The indictment in the case was handed down on June 27, 1979. The method used to select the jurors in this case was not the same as that found impermissible by this court in *State v. Jenison*, R.I., 405 A.2d 3 (1979). In *Jenison*, the exemption granted to college students and professors

under G.L.1956 (1969 Reenactment) § 9–9–3[1] operated as an automatic exclusion. Anyone listing his occupation as student or professor was excluded from jury service without an affirmative claim of the exemption. In the case before us, jurors wishing to utilize the exemption had to affirmatively assert it. Nevertheless, defendant maintains that this new procedure solves nothing, because persons who were able to claim the exemption did claim it, thereby violating the fair-cross-section requirement of the Sixth Amendment.

The same issue was recently addressed by this court in State v. Ballard, R.I., 439 A.2d 1375 (1982). In Ballard, we held that the evidence presented by the defendant was insufficient to show that any cognizable class of persons was being unconstitutionally excluded from jury service. Further, we held that the evidence did not demonstrate "a gross under-representation" of members of the academic community. Id. 439 A.2d at 1381–82. Similarly, in this case there was insufficient evidence in the record from which the trial justice could have ruled in defendant's favor. The only testimony presented on this issue came from Alfred Travers, Jr., the jury commissioner. His testimony described the way in which the exemption is claimed and at one point he stated that he does not automatically exclude anyone. Without an adequate factual predicate to support the contention that a cognizable class of persons has been excluded from jury service in this case, we cannot conclude that defendant's Sixth Amendment rights have been violated.

■ We next consider the alleged errors by the trial justice in responding to two questions asked by the jurors during their deliberations. Approximately four hours into their deliberations, the jurors sent a note to the judge that contained four questions. The question and subsequent answer to which defendant objects is as follows:

"Q. What date is on the police complaint, 5/8 or 5/9?

"A. I would answer the police complaint is not in evidence."

The defendant contends that although the police complaint was not introduced into evidence, the defense cross-examined the complaining witness regarding her statement to the police, and that therefore the trial justice should have indicated that her statement was made on May 9. The defendant claims that the failure to respond in that way caused the jurors to disregard the cross-examination of the victim on her statement to the police.

We find no error in the trial justice's response. He properly indicated that the complaint was not in evidence. There is nothing in the justice's reply which suggests that the jurors should not consider the weight to be given to all of the testimonial evidence, including the victim's cross-examination. In fact, the trial justice had previously charged the jurors that the evidence in the case consisted of both "the oral testimony which was given under oath from the witness stand and the exhibits which you will have with you in the jury room."

In State v. Kandzerski, 106 R.I. 1, 255 A.2d 154 (1969), this court considered a claim similar to the one before us. There, the trial justice responded to a question posed by the jurors during their deliberations by saying that the requested information was not in evidence. The justice proceeded to instruct the jurors regarding the role of the attorneys in presenting the evidence. The defendant took exception because he claimed that the remarks implied that the defense had withheld material evidence. This court found that a reading of the trial justice's reply showed that he was being completely factual and impartial and that the alleged implication had no basis whatsoever in fact. Id. at 5–6, 255 A.2d at 157. We likewise find that the inference defendant takes here has no basis in fact and amounts to pure speculation.

1. The exemption for members of the academic community has since been eliminated by P.L. 1980, ch. 242, § 2.

■ Later in their deliberations the jurors again sent a note to the trial justice, this time requesting the definition of rape. The justice responded by repeating the instruction he had given earlier. He followed that by elaborating on what is meant by the requirement that the victim "did not consent."[2] He had not done this previously. Approximately five minutes after the jury again undertook deliberations, they returned with the guilty verdict.

We note initially that defendant does not challenge the correctness of the additional charge defining consent. In fact, counsel conceded at oral argument before us that the charge was legally correct. The additional charge fully comported with the requirements laid down by this court in *State v. Verdone*, 114 R.I. 613, 621, 337 A.2d 804, 809–10 (1975).

The defendant claims instead that this additional instruction went beyond what was requested by the jury and in fact could have been interpreted as a comment on the evidence, thereby prejudicing the jury. We fail to see how it can be said that defining consent goes beyond the scope of a question asking for "the definition of rape." Further, the additional charge was totally impartial. *State v. Kandzerski, supra.* Thus, we hold that the trial justice acted well within his discretion when he elaborated on his earlier instruction regarding the definition of rape. The fact that the jury reached a verdict so soon after the judge's answer implies to us that any confusion in the minds of the jurors regarding the proper application of the law to the facts was eliminated. There is simply no basis in fact whatsoever for the contention that this charge would have been interpreted by the jury as a comment on the evidence.

The final issue is whether the trial justice erred in denying defendant's motion for a new trial on the ground of newly discovered evidence. The evidence defendant contends was newly discovered was a statement made by the victim to police on May 7, 1979, when she said that her clothes had been "ripped off" by defendant during the rape. Counsel for defendant claims he was told about this statement by Detective Philip J. Collins of the Providence police department while the jury was deliberating. The defendant argues that the statement was directly material and relevant to the issue of consent since there was only slight damage to her clothes.

■ The standard for granting a motion for a new trial based on newly discovered evidence is that the evidence must actually be newly discovered since the trial. The defendant must have been diligent in attempting to discover the evidence for use at the original trial. The evidence must not be merely cumulative or merely impeaching. The evidence must be material to the issue and be of the kind that would probably change the verdict at a new trial. *State v. Benoit*, 117 R.I. 69, 363 A.2d 207 (1976); *State v. Carsetti*, 111 R.I. 642, 306 A.2d 166 (1973).

■ We find that the evidence here fails to meet this standard because it was merely cumulative and impeaching. On direct examination, the victim testified that defendant "stripped me of all my clothes except my bra." On cross-examination she acknowledged that there was very little damage to her clothes, and in response to defense counsel's specifically asking how de-

---

2. The additional charge given by the trial justice in response to the jurors' question is as follows: "When I say, 'did not consent,' I mean the woman must resist to the best of her ability under the circumstances. The resistance required, however, depends upon the relative strength of the parties, the force manifested by the assailant, the fear instilled in the victim, and all other relevant circumstances. The degree of resistance must be such as will exclude the conclusion or inference that the woman gave her consent."

However, P.L. 1979 ch. 302 § 2 which became effective May 9, 1979 provides:

"11–37–12 Proof of resistance unnecessary. —In any prosecution brought under this chapter it shall not be necessary to prove that the victim physically resisted the accused if the victim reasonably believed that such resistance would be useless and might result in his or her serious bodily injury."

fendant removed her clothing, she responded,

> "[h]e slipped them off. He ripped them off, like I said, you would peel a banana. When you peel a banana you just peel them off. You just peel a banana off. I never had that happen to me before."

Thus, it is clear, and the trial justice so found, that the jury was well aware of the discrepancy in her testimony in that it could be inferred from her testimony on cross-examination that her clothing was torn apart when in actuality her clothes were virtually undamaged. Her statement to the police would have been cumulative to her reply on cross-examination and its value, if any, would have been to impeach her credibility.

■ There is a further question regarding this issue, which has to do with the disclosure of evidence by the prosecution in response to a discovery request by defendant. In *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), the Supreme Court held that the prosecution's suppression of evidence upon request violates due process where the evidence is favorable to an accused and is material either to guilt or to punishment. This rule applies without regard to the good faith or bad faith of the prosecution. *Id.* at 87, 83 S.Ct. at 1196–97, 10 L.Ed.2d at 218. This court had occasion to discuss at length the *Brady* rule in *In re Ouimette*, 115 R.I. 169, 342 A.2d 250 (1975). When considering this type of issue, the court focuses on the harm caused to the defendant by his lack of evidence that was in the state's possession. *Id.* at 176, 342 A.2d at 253.

This court considered two unanswered questions after *Brady*: first, just what evidence is "material" enough to require a new trial, and second, whether its holding is based solely upon the fact of a specific request for clearly defined evidence. *Id.* at 177, 342 A.2d at 254. This court adopted a variable standard of materiality depending on the prosecutor's culpability. *Id.* In cases in which there is an unintentional, inadvertent suppression of evidence, we held that a defendant must show that there is "a significant chance that the use and

development of the withheld evidence by skilled counsel at trial would have produced a reasonable doubt in the minds of enough jurors to avoid a conviction." *Id.* at 179, 342 A.2d at 254–55.

After this court decided *In re Ouimette, supra*, the Supreme Court again had occasion to discuss the issue of nondisclosure of evidence. *United States v. Agurs*, 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976). The Supreme Court noted that the rule of *Brady v. Maryland, supra*, arguably applies to three quite different situations. One involves the use of testimony known by the prosecution to be perjured, and a conviction so obtained must be set aside as fundamentally unfair. *Id.* at 103, 96 S.Ct. at 2397, 49 L.Ed.2d at 349. The second situation is the *Brady* case itself and is characterized by a specific pretrial request for evidence. If the withheld evidence is material, due process requires a new trial. *Id.* at 104, 96 S.Ct. at 2398, 49 L.Ed.2d at 350. The third situation is the one that was specifically raised by the *Agurs* case, that is, whether the prosecution has any obligation to provide defense counsel with exculpatory information when no request has been made. *Id.* at 107, 965 S.Ct. at 2399, 49 L.Ed.2d at 352. In this regard the Court noted that many cases involve requests that are less than specific.

> "[W]e conclude that there is no significant difference between cases in which there has been merely a general request for exculpatory matter and cases, like the one we must now decide, in which there has been no request at all." *Id.* at 107, 96 S.Ct. at 2399, 49 L.Ed.2d at 351–52.

In this third situation, the Supreme Court held that the proper standard of materiality governing whether the omitted evidence necessitates a new trial is that the additional evidence must be evaluated to determine whether it would have produced a reasonable doubt of guilt. Id. at 112–13, 96 S.Ct. at 2402, 49 L.Ed.2d at 355. *This is the same standard reached by this court previously in In re Ouimette, supra.*

This is the situation in the case before us. The defendant requested, pursuant to Rule 16 of the Superior Court Rules of Criminal

Procedure, "all written or recorded verbatim statements, signed or unsigned" by the state's witnesses. This specific request was complied with when the state provided the police complaint form to defendant. The defendant next requested a summary of the expected testimony of each of the state's witnesses if no written statement existed. In view of the nonspecific nature of this request, we must conclude that the nondisclosure of the complaining witness' statement to Detective Collins was unintentional and inadvertent. Clearly, a request for a summary of testimony does not encompass everything a witness may have said to law-enforcement authorities.

Also, the victim's statement fails the test of the likelihood that it would have produced a reasonable doubt of guilt. As previously indicated, the trial justice found that the jury was well aware of the discrepancy in her testimony. He further indicated that he was satisfied that there would have been no change whatsoever in the outcome had the jury heard the additional statement. We are in accord with these findings as we believe the statement would merely have been cumulative for impeachment purposes. Thus, we hold that there was no significant chance that this additional evidence would have produced a reasonable doubt in the minds of the jurors. *United States v. Agurs* and *In re Ouimette, both supra.*

For the reasons stated herein, the appeal is denied and dismissed, the judgment of conviction is affirmed, and the papers of the case are remanded to the Superior Court.