DECISION ON REMAND
The defendant Dennis Evans was charged with and convicted of the crime of robbery. His appeal from that conviction is presently before the Supreme Court. That Court, upon defendant's motion, has remanded to this Superior Court for hearing, defendant's second motion for new trial, that motion alleging newly discovered evidence. As mandated, the defendant's motion for new trial was heard and concluded.
The newly discovered evidence asserted at the remand hearing was said to be the failure of the State to furnish to defendant's trial counsel the "entire" cooperation agreement that it had entered into with one of its witnesses, Darrell Kroll. The omitted portion of the cooperation agreement being that the State would send a favorable consideration letter to the parole board, if and when Kroll came up for parole consideration.
It is clear from the hearing evidence, and from the actual trial testimony of Kroll that the defendant's trial counsel was furnished with Kroll's lengthy state and federal criminal record, as well as the recommendation that had been made regarding his pending state charge or charges, that recommendation calling for jail time. The defendant's contention now, that he was prejudiced by not having been told that the State had also agreed to write a favorable letter to the Parole Board if and when Kroll did ever come before the Board is simply without merit.
At trial, the proof of guilt against the defendant was far beyond any reasonable doubt. It was overwhelming. The defendant in August of 1988 robbed the Hospital Trust branch bank on Taunton Avenue in East Providence. Maria Quintanilha, working there at the time, was one of the tellers who was robbed. She identified the defendant when in leaving the scene of the robbery, he removed the facial mask he had been wearing. At that moment, Miss Quintanilha was able to observe his face. In addition, she testified that while in the bank, although the defendant wore a mask, she noted his unique light eyes which she said were of the kind that one would be able to "pick out from a crowd." On the day of the robbery, she gave a description of the robber to an East Providence Patrolman, Walter H. Barlow. He prepared a composite drawing from her description. That composite drawing was introduced at the trial. The profile and eyes depicted in the composite mirrored the defendant.
Miss Quintanilha also testified that some six months later, in February of 1989, while again at work in the bank, it was robbed again. This time, however, by two men. She noted, however, that the robbery was carried out in the same methodical manner as the earlier robbery. When asked to again view photographs at the East Providence police station she suddenly picked out the photograph of the defendant and said that he was the person who had committed the earlier 1988 robbery. One of the police officers knew the defendant as well as his daughter, Dawn Evans, and her boyfriend, David DiLibero. He also knew where they lived at 150 Harold Street in Providence. An authorized search of that premises produced incriminating evidence against the defendant. Included in that evidence was a letter from the defendant, from the Adult Correctional Institutions where he was being held, unable to furnish bail. In the letter, the defendant having previously successfully robbed the branch bank in August 1988 explained to his daughter how to redo the job, and advised her with regard to avoiding detection. He also gave her some good fatherly advice with regard to not spending the robbery money too freely, and, to be certain to set aside enough money for lawyers and bail, should she be arrested. Certainly that was sound advice from someone charged with robbing the same bank and unable to furnish counsel and bail for himself.
There was, in addition to the evidence from Miss Quintanilha, substantial other evidence from the bank videotape of the robber and from a Dr. Bliss that connected the defendant to the robbery.
As to the witness Darrell Kroll, about whom the defendant now centers his present motion for a new trial. Kroll testified that in the summer of 1991 he lived with the defendant. One day, while riding in an automobile with the defendant on Taunton Avenue in East Providence, the defendant pointed to the Hospital Trust branch bank and told him that he had robbed that bank and had made off with about $41,000.00. In addition, he told Kroll about how he had planned an alibi as well; if later apprehended for the robbery. Kroll at the time thought that the defendant was simply "bragging" and that it was just idle thought. Later, when Kroll learned that it was not just idle talk, he decided to use that evidence to help himself when facing unrelated criminal charges. He was able to plea negotiate with the prosecution and get himself a reduced time jail disposition, being less than what had been previously offered him, and in addition should he ever be eligible for parole, a promise from the Attorney General's Department to write a favorable letter to the Parole Board.
Prior to trial, defendant's trial counsel was furnished with all State and Federal criminal records of Kroll. Trial counsel was not, however, told of the future promise to write a letter to the Parole Board. At trial, defendant's attorney used all of Kroll's State and Federal convictions and all of his pending criminal charges in an attempt to impeach and discredit his testimony. Notwithstanding, the jury did apparently accept his testimony, although even without it, there was still overwhelming proof of guilt beyond a reasonable doubt.
Against that background, the defendant now attempts to show that had the jury been made aware of the fact that sometime in the future, if Kroll, imprisoned on other charges came up for parole, the Attorney General's office would write a favorable letter on his behalf to the Parole Board the jury would never have believed anything said by Kroll. Such contention is quite simply ludicrous. If Kroll's numerous convictions, both State and Federal, as well as his pending criminal charges and his jail time plea negotiations couldn't do the trick, the letter had no chance.
The mere fact that an insignificant portion of Kroll's plea bargaining agreement was not furnished to his trial counsel does not automatically mandate a new trial as asserted now by the defendant. The trial judge must put the omitted evidence through the so-called three part test process. The first part of that test process requires the trial judge to find that the evidence must actually be newly discovered since the defendant's trial. In this case, it is. Next, the trial judge must find that the defendant was diligent in attempting to discover the evidence for use at his trial. In this case he was. Finally, and most crucial, the trial judge must find that the newly discovered evidence is not merely cumulative or impeaching, but must be material to the issue of guilt, and of such nature that if such evidence was to be considered by a new trial jury, it would probably change the verdict at the new trial.
In this case, the evidence regarding an insignificant part of the State's plea bargaining agreement with Kroll would be material only with regard to impeaching the witness Kroll's credibility. If his record of both State and Federal convictions and his history of criminal activity, and his plea negotiations with the State did not impeach him, the Attorney General Department's letter is useless. In addition, the impeaching nature of the alleged newly discovered "letter" evidence would simply be cumulative impeaching evidence and is so insignificant when viewed against the overwhelming independent evidence of defendant's guilt that under no imaginable circumstances would it probably change the verdict at a new trial.
Because of the above findings, this Court need not consider whether the alleged newly discovered "letter evidence" is credible enough to warrant a new trial, but nonetheless, despite its credibility, its probative insignificance would not under any circumstance warrant a new trial. State v. Vendetti,655 A.2d 686 (R.I. 3/16/95); State v. Estrada, 537 A.2d 983, 986 (R.I. 1988); State v. Brown, 528 A.2d 1098 (R.I. 1987); State v.Bassett, 447 A.2d 371 (R.I. 1982).
For the reasons above stated, the defendant's Motion for a New Trial on the basis of newly discovered evidence is denied.
This case is to be returned forthwith to the Supreme Court.