STATE

v.

Luis ESTRADA.

No. 86–402–C.A.

Supreme Court of Rhode Island.

Feb. 25, 1988.

James E. O'Neil, Atty. Gen., Thomas Dickinson, Asst. Atty. Gen., for plaintiff.

Edward J. Romano, Providence, for defendant.

## OPINION

FAY, Chief Justice.

This case comes to us on appeal by the defendant, Luis Estrada (Estrada), from a Superior Court jury conviction for robbery.[1] After denying the defendant's motion for a new trial, the trial justice sentenced Estrada to seventy years at the Adult Correctional Institutions (ACI), of which ten years were suspended and sixty years were required to be served. Additionally, the trial justice gave Estrada ten years of probation upon his release from the ACI. We affirm this conviction.

The facts are as follows. At approximately 1:35 p.m. on January 27, 1984, a robbery occurred at the Automatic Chain Company (hereinafter called the company) located at 181 Corliss Street in Providence. This robbery began when a young unidentified Hispanic male entered the retail section of the company. After several minutes this young man jumped over the sales counter, displayed a revolver, and ordered the sales personnel to lie on the floor. Simultaneously, three men entered the adjacent guard area of the company. Recognizing one of these individuals as a previous customer, the security guard on duty, Michael Wilson (Wilson), buzzed open a locked door leading into the vault area.

The three men entered the vault area. Testimony indicates that at least one of them had a gun, and these men pushed both the security guard and a company employee who were in the guard area to the floor.

The company employees testified that four men committed the robbery. None of these eyewitnesses, however, were able positively to identify the men. They could only indicate that one of the two robbers who wore masks was black and the two unmasked robbers were of apparent Hispanic descent.

The robbers took various gold items from the retail store and the company vault. Some of these items were stamped with the company's logo. An employee also testified that one robber took some cash from a cash register in the retail area.

According to the evidence at trial the robbers escaped from the factory and retail outlet in a red two-door Ford Torino bearing the license plate designation OF 826. This vehicle was parked in the southbound emergency lane of Interstate Route 95, which abuts the company parking lot. The robbers fled the company, ran across the parking lot, jumped over the highway fence, and sped off in the car. Police investigation revealed that this vehicle was registered to Daniel Mercedes, who testified at trial that he had lent his car to his friend, Felipe Estrada,[2] brother of defendant, shortly before the robbery. Felipe Estrada did not return the vehicle to Mercedes, but rather the Providence police returned it to Mercedes after the robbery. Mercedes was told by the police that his car was used in the robbery.

Several witnesses' testimony at trial linked Estrada to the crime. The security guard, Wilson, testified that a few days prior to the robbery, Estrada and his brother Felipe had visited him. During this visit the brothers inquired about the layout of and the security systems at the company.

---

1. This jury conviction was Estrada's third trial on this indictment, No. 84–0753. The previous two trials ended in a mistrial and a hung jury, respectively.

2. Felipe Estrada and Luis Payano were tried separately and convicted in Superior Court of the Automatic Chain Company robbery. *State v. Payano,* 528 A.2d 721 (R.I. 1987) (affirming trial court judgment of conviction for both the defendants).

Wilson explained that he failed to contact police because of a threatening phone call he received just before the visit.

Latrall Malone (Malone) also testified that both he and Estrada were involved in the January 23 robbery. Before trial Malone entered into an agreement with the state to testify about Estrada's involvement in the robbery. The state terminated the deal, however, after Malone invoked his Fifth Amendment privilege at the inception of his trial testimony. Although he later agreed to testify, he did so without the benefit of the original agreement. Nonetheless Malone implicated Estrada in the robbery.

Malone testified that Estrada helped plan the robbery. Corroborating Wilson's testimony, he also stated that Estrada and several others visited Wilson's house before the crime. Further, Malone indicated that Felipe Estrada, Luis Payano, a juvenile named Jesse, and he entered the company during the robbery while Estrada waited outside and drove the getaway car.

Loni Worthington (Worthington), Felipe's girlfriend, testified about events occurring after the robbery. She stated that on the evening of the robbery Estrada, Felipe Estrada, Luis Payano, and Jesse arrived at her cousin Natasha Jaron's house carrying duffel bags filled with gold. Thereafter, Worthington, Jaron, and the men traveled to New York, where she thought the men exchanged the gold for money. Worthington further testified that several times she heard these men laughing about how they had "pulled it off." She also heard them refer to "jewelry factory" and "Automatic Chain."

In addition to testifying about the gold, Worthington also testified that before his trial Estrada telephoned her and asked her if she planned to testify against him. He offered to provide her with a month's lodging in Connecticut and food money if she agreed to stay out of the state until his trial was over. She declined to accept this gracious offer, opting instead to accept the state's offer not to prosecute her in exchange for her testimony.

Estrada raises four issues on appeal. Where necessary we shall include additional facts.

I

## DID THE TRIAL JUSTICE ERR BY DENYING THE MOTION FOR NEW TRIAL BASED ON NEWLY DISCOVERED EVIDENCE?

In his first argument Estrada contends that the trial justice erred when he denied a motion for a new trial based on newly discovered evidence. Estrada bases his argument on Latrall Malone's recantation of his trial testimony. As noted above, prior to the trial Malone entered into an agreement with the state to testify for the prosecution. Upon invoking his Fifth Amendment right against self-incrimination, this agreement was terminated. Thereafter, he testified without the benefit of the state agreement and implicated Estrada.

Sometime after the trial Malone gave a statement to Estrada's attorney in which he recanted his trial testimony. The trial justice held a hearing to examine the credibility of this affidavit in which Malone claimed that he did not participate in the robbery and that his trial testimony was fictitious. Malone also maintained that because he was not involved in the robbery, he had no direct knowledge that Estrada drove the getaway car.

The trial justice, ruling that Malone's recantation was incredible and cumulative, consequently refused to grant Estrada a new trial. Estrada contends that the trial justice erred. He argues that despite his diligence this evidence was unavailable at the time of trial. Furthermore the recantation was material and, if presented to the jury, would probably have resulted in a different verdict. For these reasons, Estrada argues the motion should have been granted.

In *State v. Brown*, 528 A.2d 1098 (R.I. 1987), this court set forth the standards a recantation must meet in order to support a motion for a new trial. The trial justice ruled on Estrada's motion, however, without the benefit of the *Brown* decision.

Nonetheless, we find that the trial justice's ruling considered the factors set forth in *Brown* and is correct.

 This court has often stated that we shall not change the decision of a trial justice on a motion for new trial unless the decision is clearly wrong or unless the trial justice, in reviewing the evidence, overlooked or misconceived relevant and material evidence. *Brown*, 528 A.2d at 1104; *State v. Collazo*, 446 A.2d 1006, 1012 (R.I. 1982). Under *Brown* newly discovered evidence serves as the basis for a new trial if it satisfies a two-part test. The threshold test consists of four factors: (1) the evidence must actually be newly discovered since trial, (2) the defendant must have been diligent in attempting to discover the evidence for use at the original trial, (3) the evidence must not be merely cumulative or impeaching but must be material to the issue, and (4) the evidence must be of the kind that would probably change the verdict at a new trial. *Brown*, 528 A.2d at 1104. If the evidence satisfies this threshold test, the second part of the test requires the trial justice to decide whether the evidence is credible enough to warrant a new trial. *Id.* When making this assessment, the trial justice must exercise his or her independent judgment about the credibility of witnesses and the weight to be given their testimony. *Id.; see State v. Carsetti*, 111 R.I. 642, 652, 306 A.2d 166, 171–72 (1973).

█ We do not believe that the trial justice was clearly wrong or that he misconceived or overlooked material evidence when examining Malone's trial recantation. Although the trial justice did not have the benefit of the *Brown* test, he ruled that the recantation was cumulative and would not have changed the jury verdict. Estrada therefore did not satisfy the threshold test. Under *Brown* that failure obviates the need to address the credibility issue. The trial justice's comprehensive ruling, however, addressed the question of credibility. He ruled that Malone's recantation was entirely incredible. Malone exhibited extensive and intimate knowledge of details of the robbery in his trial testimony, details that only one of the perpetrators or eyewitnesses could have known. For example, Malone testified at trial about the entrances the robbers used, the number of guns they carried, the bags in which they carried the gold, the fact that money was taken from a cash register, and the fact that unaware employees walked in during the robbery. Since Malone's recantation failed to satisfy the substance of *Brown*, if not the particular definition, we agree with the trial justice's ruling that the recantation did not support a motion for a new trial.

II

## DID THE TRIAL JUSTICE COMMIT REVERSIBLE ERROR BY ADMITTING OTHER CRIME TESTIMONY INTO EVIDENCE?

Estrada maintains that the trial justice improperly permitted Loni Worthington to testify regarding other criminal activities in which defendant engaged. He argues that over counsel's objections the trial justice permitted Worthington to testify that defendant obstructed justice by attempting to convince her not to testify at his trial, that defendant received stolen goods, and that defendant engaged in a conspiracy. The defendant contends that this testimony was exceedingly prejudicial and was not reasonably necessary to the state's case and that its admission deprived him of a fair trial. We do not agree with this argument.

The record indicates that defense counsel did not preserve his right to appeal these issues. Although counsel objected several times during Worthington's testimony, the defense never objected to the portions of her testimony describing Estrada's other crimes. He instead objected to this testimony on "garden variety" evidentiary grounds.[3]

 Rhode Island precedent prohibits an appeal based on a matter that was not initially presented and articulated to the

---

**3.** Defense counsel's "garden variety" objections to some questions were grounded on hearsay, leading, lack of foundation, asked and answered, and opinion.

trial court. *State v. Byrnes,* 433 A.2d 658, 670–71 (R.I. 1981); *State v. Duggan,* 414 A.2d 788, 791 (R.I. 1980); *see, e.g., State v. Brennan,* 526 A.2d 483, 487 (R.I. 1987); *State v. Burke,* 522 A.2d 725, 731 (R.I. 1987); *State v. McMaugh,* 512 A.2d 824, 829 (R.I. 1986); *State v. Fogarty,* 433 A.2d 972, 974 (R.I. 1981). A party who fails to record his specific objections is deemed to have waived his rights on appeal. *State v. Long,* 488 A.2d 427, 432 (R.I. 1985). An exception to the "raise or waive" rule exists. This exception, however, applies only when the defendant's basic constitutional rights are at issue. *State v. Burke,* 522 A.2d at 731; *see State v. Fogarty,* 433 A.2d at 974. In *State v. Burke* this court enunciated a three-part test a party must satisfy in order to qualify for this exception. According to *Burke,* the error complained of must be more than harmless error, the record must be sufficient to permit a determination of the issue, and the counsel's failure to raise the issue at trial must be attributed to a novel rule of law that counsel could not reasonably have known during the trial. *State v. Burke,* 522 A.2d at 731.

■ The instant case does not qualify as an exception to the "raise or waive" rule. Even if we were to decide that defendant's constitutional rights were at issue, defendant's reasons for failing to object do not satisfy the third prong of this test. Counsel's argument on appeal is not based on a novel rule of law but rather is based on an established evidentiary rule. Consequently this issue is not properly before this court.

### III

### DID THE TRIAL JUSTICE COMMIT REVERSIBLE ERROR BY ADMITTING MALONE'S TESTIMONY AFTER THE AGREEMENT TO TESTIFY WAS ABANDONED?

■ The defendant contends that he should be granted a new trial because of the prosecutor's tacit bolstering of Malone's testimony, which inhibited the defense counsel's ability to cross-examine him effectively. Counsel argues the state's termination of the agreement bolstered Malone's credibility in the eyes of the jurors by denying defense counsel the opportunity to cross-examine Malone about his bias, credibility, and motive for testifying against Estrada.

Before the recantation the prosecutor, in his opening statement, apprised the jury of the state's arrangement with Malone. Surprisingly, however, when Malone was called to the stand, he invoked his Fifth Amendment privilege and refused to answer questions. The trial justice excused the jury and discussed with counsel the possibility of admitting Malone's testimony from one of defendant's prior trials. The judge decided to admit this prior testimony. Soon after this decision Malone retracted his privilege and was willing to testify.

Despite Malone's willingness to testify, however, the prosecutor refused to reinstate the abandoned deal. During Malone's direct examination, the prosecutor confirmed that Malone understood that the agreement with the state was terminated and that the state would not make a recommendation on his behalf. During this examination the defense counsel made one general objection to the following question and answer:

"Q. Has he [your attorney] told you that 25 years, 10 to serve is *no longer* the recommendation that will be made in your case?

"A. Right.

"MR. COOPER [defense counsel]: Objection, Your Honor.

"THE COURT: Well, he's already answered. It may stand."

The record indicates that defense counsel did not pursue this objection, nor did he specifically object to the alleged bolstering of Malone's testimony.

The defense counsel's argument, however, once again fails to recall the appellate requirement that unless an issue is raised at the trial level, it is not preserved for appeal. The reasoning pursued in section II above applies to defendant's failure to present this specific issue to the trial judge. Counsel cannot now raise this question for the first time on appeal.

## IV

### DID THE TRIAL JUSTICE COMMIT REVERSIBLE ERROR BY ADMITTING INTO EVIDENCE GOLD JEWELRY SEIZED BY POLICE FROM LONI WORTHINGTON AND CODEFENDANT FELIPE ESTRADA?

■ The trial judge, over objection of defense counsel, admitted into evidence gold jewelry that the police seized from Loni Worthington and Felipe Estrada. Worthington surrendered to police gold items that she had hidden at home in Providence. The gold taken from Felipe Estrada was seized by Miami police when they arrested him in Florida.

The defendant contends that these gold items taken from other parties do not relate to him and therefore did not qualify as relevant admissible evidence. In the alternative he argues that if the trial justice deemed it relevant, he should have excluded the gold because its prejudicial effect on the jury outweighed its relevance. We do not agree.

We define relevant evidence as any evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. *State v. Wheeler,* 496 A.2d 1382, 1388 (R.I. 1985); *Capezza v. Hertz Equip. Rental Corp.,* 118 R.I. 1, 6–7, 371 A.2d 269, 272 (1977). The well-settled rule in this jurisdiction is that the admissibility of evidence, when opposed by an objection of irrelevancy, is a discretionary matter for the trial justice to resolve. *State v. Ashness,* 461 A.2d 659, 674 (R.I. 1983); *State v. Gelinas,* 417 A.2d 1381, 1386 (R.I. 1980); *see also Kelaghan v. Roberts,* 433 A.2d 226, 231 (R.I. 1981); *Englehardt v. Bergeron,* 113 R.I. 50, 57, 317 A.2d 877, 882 (1974). This court will not disturb the trial justice's ruling unless it is a prejudicial abuse of discretion. *State v. Parente,* 460 A.2d 430, 436 (R.I. 1983); *State v. Gelinas,* 417 A.2d at 1386. In the instant case in response to the defense's objection to the admission of the gold into evidence, the trial justice noted that the gold corroborated the testimony of Michael Wilson and Latrall Malone. He therefore determined the evidence was relevant and admissible. We cannot rule that this was an abuse of discretion that unduly prejudiced the defendant. The accumulation of evidence against this defendant surely would have resulted in the same verdict. Therefore, we shall not disturb the trial justice's ruling.

For the foregoing reasons the defendant's appeal is denied and dismissed, the judgment of conviction entered in the Superior Court is affirmed, and the papers in the case may be remanded to the Superior Court.