Arthur FONTAINE

v.

STATE.

No. 90–219–A.

Supreme Court of Rhode Island.

Jan. 21, 1992.

Richard Casparian, Public Defender, Janice Weisfeld, Barbara Hurst, Asst. Public Defenders, for plaintiff.

James E. O'Neil, Atty. Gen., Jeffrey Greer, Jane McSoley, Asst. Attys. Gen., for defendant.

## OPINION

FAY, Chief Justice.

This case comes before us on the appeal of Arthur Fontaine (applicant) from the denial of his application for postconviction relief pursuant to G.L.1956 (1985 Reenactment) § 10–9.1–1(a)(4). We affirm the decision of the trial justice finding the recanting testimony of the complaining witnesses incredible and therefore denying the applicant postconviction relief. The relevant facts are as follows.

On August 31, 1982, the Superior Court sentenced applicant to ten years' imprisonment after he pleaded nolo contendere to

charges of third-degree sexual assault in violation of G.L.1956 (1981 Reenactment) § 11–37–6 and commission of the abominable and detestable crime against nature in violation of § 11–10–1. With respect to each charge the applicant received a suspended sentence subject to a period of probation.

During April 1987, while in the probationary period, applicant was charged with two criminal offenses: sexual assault in the third-degree in violation of § 11–37–6 against John R. and first-degree child-molestation sexual assault in violation of § 11–37–8.1, as amended by P.L.1984, ch. 59, § 2 against Jane D.[1] On April 30, 1987, applicant admitted he had violated his probationary status and also pleaded nolo contendere to the new charges. He simultaneously executed a statement in which he maintained his innocence of those charges. The applicant was sentenced to serve five and six years of imprisonment concurrently.

On February 10, 1988, applicant filed an application for postconviction relief based upon newly discovered evidence: the two complaining witnesses' purported recantations of the charges they had brought against him. These witnesses stated to applicant's counsel that they were lying when they reported to the police that applicant had sexually assaulted them. They also signed affidavits drafted by applicant's attorney after each had spoken, in which they purported to recant their charges of criminal activity, stating that they had originally lied to the police. On April 11, 1988, applicant appeared before the trial justice who had also presided at the violation hearing and the taking of the nolo contendere pleas. The trial justice considered the application for postconviction relief along with the complaining witnesses' affidavits allegedly recanting their charges and denied the application. The trial justice found applicant was barred from seeking postconviction relief on the basis of the newly discovered or available testimony because he had admitted proba-

---

**1.** These are fictitious names. In all cases of sexual abuse and molestation this court changes the names of the victims to protect their identities.

tion violation and pleaded nolo contendere to the charges. He heard no evidence on this matter. The applicant appealed the denial of his application for postconviction relief to this court.

In *State v. Fontaine*, 559 A.2d 622 (R.I. 1989), this court found that applicant's admission of probation violation and his pleas of nolo contendere to new charges upon which the violation of probation was based did not bar him from having the trial court consider his application for postconviction relief. The court stated that if a prima facie showing of new evidence exists, the trial justice must conduct an evidentiary hearing. *Id.* at 625.

On remand to the Superior Court, the trial justice heard testimony from the two complaining witnesses, John R. and Jane D., allegedly recanting their charges against applicant. During the proposed recantation testimony before the court, Jane D. stated that she was sexually assaulted between the ages of six and eight, not by applicant but by another man. She testified that her mother and stepfather knew of the assaults but never reported them to the authorities. She asserted that she was recanting because she felt guilty for the lies she had told. Jane D. stated that she lied to the police in order to charge applicant with criminal conduct and thereby punish her mother by sending applicant to prison. In her affidavit Jane D. stated that she had a detailed knowledge of sexual activity because she had been assaulted by the other man, but while testifying in court, she stated that she obtained the detailed ideas from a friend. John R. testified that he lied for Jane D. because he thought she had been abused by applicant, then later he said that he never believed her but had lied because she had asked him to do so. He further stated that he lied because he thought applicant was his real father and wanted to punish him. The trial justice also heard testimony corroborating the witnesses' recantations from applicant's wife, Betty Fontaine, and other character witnesses. Betty Fontaine had driven both Jane D. and John R. to the office of applicant's attorney to recant their criminal allegations and remained while each witness spoke with the attorney.

The state presented contradictory evidence from the police detective who had taken the original criminal complaints, the Department for Children and Their Families (DCF) caseworkers, and Mary M., the woman with whom Jane D. lived after she was removed from her home. Detective Choquette testified that Jane D., thirteen years old at the time, had come to the Central Falls police station three separate times during February and March 1987 and provided him with a detailed description of applicant's alleged sexual misconduct over a period of six years. She then corrected and clarified these statements. The detective also testified that when John R. gave his statement, he became so emotionally distraught that the interview had to be stopped. Both Mary M. and a DCF caseworker testified that Jane D. was disappointed that applicant had not received a longer sentence. Mary M. also testified that Jane D. told her she was recanting for her mother. The DCF caseworker further stated that Jane D. told him that she had informed her mother of applicant's conduct but that Betty Fontaine would allow him to return to the house when money was low. He also testified that Betty Fontaine had badgered Jane D. during their visits when Jane D. was in Mary M.'s custody. The trial justice heard direct testimony and the cross-examination of each of the witnesses before the court, observed each witness's demeanor, and compared in-court testimony with the complaining witnesses' signed affidavits recanting the criminal allegations and the original statements given to the police. The trial justice ultimately found the recantation of the testifying witnesses to be "wholly incredible in light of prior statements made by them to the Central Falls police department" and thereby denied applicant's request for postconviction relief.

In his decision, the trial justice stated the grounds for his ruling and the basis for finding the purported recantations of the complaining witnesses incredible. He pointed to specific reasons why certain witnesses' testimony was believable and made

his credibility determinations of the recantations after weighing all the facts and evidence presented before the court. The trial justice found Jane D.'s original complaining statements to the police to be believable because those statements were highly detailed and because she corrected and clarified confusing allegations. He found Jane D.'s stated motive for lying in order to punish her mother "highly illogical and frankly, unbelievable." The trial justice also noted that cards that applicant had sent to Jane D. expressing warm feelings for her and offered at the hearing were all dated after Jane D. had recanted her testimony by affidavit in the offices of applicant's attorney. The trial justice found the detail of John R.'s original statement and his emotional disturbance when relating allegations of criminal activity to the police to be indicative of its credibility in light of inconsistencies in his in-court testimony. He considered Betty Fontaine's involvement in the recantations of the witnesses significant, finding that she had a financial interest in having the complaining witnesses recant in order to have applicant released and able to recover the pension he lost due to the criminal charges. The trial justice, presented with both versions of the actual facts, found Detective Choquette and Mary M. credible witnesses and Jane D., John R., and Betty Fontaine incredible and thereby denied postconviction relief to applicant.

The applicant now appeals the trial justice's denial of his application for postconviction relief. He asserts that the ruling was erroneous because (1) the trial justice was clearly wrong because he overlooked and misconceived significant material evidence, (2) the trial justice failed to assess the recantations in light of the admissions made at the time of the pleas, and (3) the trial justice failed to consider that the only time the complaining witnesses testified in open court, they both swore no assaults had occurred.

■ The standard for granting postconviction relief is the same standard for awarding a new trial. *State v. Lanoue*, 117 R.I. 342, 346, 366 A.2d 1158, 1160

(1976). There exists a two-pronged test by which the trial court determines whether to grant relief. Under the first prong of the test (1) the "newly discovered evidence" must actually be newly discovered or available since the trial, (2) the defendant must have been diligent in attempting to discover the evidence for use at the original trial, (3) the evidence must not be merely cumulative or impeaching but also must be material to the issue, and (4) the evidence must be of the kind that would probably change the verdict at a new trial. *State v. Brown*, 528 A.2d 1098, 1104 (R.I.1987). Once this initial test, referred to as the "threshold test," is satisfied, the trial justice must then determine whether the evidence presented is credible enough to warrant relief, a determination made by his accepting or rejecting conflicting testimony by exercising his or her "independent judgment." *Id.* The new evidence must satisfy both the threshold-test and credibility-test prongs in order for the trial court to grant an applicant the requested postconviction relief.

■ It is the task of the trial justice to make an evidentiary determination. "[W]hether the evidence is circumstantial or testimonial the factfinder must weigh the evidence and must use its experience with people and events in weighing the probabilities." *State v. Collazo*, 446 A.2d 1006, 1011–12 n. 4 (R.I.1982). The trial justice's credibility determination is given deference by this court. We have previously held that "[o]n review of an application for post-conviction relief we are bound by the trial justice's determination concerning credibility." *State v. Feng*, 421 A.2d 1258, 1273 (R.I.1980). *See State v. Duggan*, 414 A.2d 788, 793 (R.I.1980) (trial justice's determination of credibility binding upon Supreme Court). It is the trial court's function to weigh the evidence and assess the credibility of the witnesses, not that of the appellate court. *Bengtson v. Hines*, 457 A.2d 247, 251 (R.I.1983).

In the present case there is no challenge that the evidence did not meet the threshold test. The correctness of the trial justice's credibility determination is at issue

here. In *State v. Fontaine*, 559 A.2d 622 (R.I.1989), this court expressly stated:

"[I]t remains for the trial justice to determine whether the evidence presented is credible enough to warrant a new trial. In so doing the trial justice must exercise his or her independent judgment in regard to the credibility of the witnesses and the weight to be given to their testimony." *Id.* at 624.

The court further stated:

"At such an evidentiary hearing the trial justice may consider the proposed recanted accusation of the complaining witnesses and may assess the credibility thereof. The trial justice may further weigh the credibility of these statements in light of the defendant's admissions in open court or by affidavit of the factual basis for his plea. * * * However, the mere presentation of affidavits need not warrant the granting of a new trial. If after a full and comprehensive consideration of the proposed recanted testimony in light of the applicant's admissions and plea of nolo the trial justice is of the opinion that on the totality of the circumstances a new trial is or is not warranted, then his determination will be given the usual deference that we accord to the trial justice in such a situation." *Id.* at 625.

This court remanded the case to the trial justice, ordering him by clear instruction to conduct the hearing for postconviction relief based on the newly discovered evidence of the proposed recantations of the complaining witnesses. The trial justice conducted the required hearing wherein he was presented with conflicting evidence involving the proposed recantations by Jane D., John R., corroborating witnesses, and contradictory rebuttal witnesses.

In *State v. Estrada*, 537 A.2d 983 (R.I. 1988), after the trial a witness gave a statement to the defendant's attorney recanting his trial testimony. The trial justice held a hearing to examine the credibility of the affidavit in which the witness stated that his testimony at trial was fictitious. Finding the witness's recantation incredible and cumulative, the trial justice refused to grant a new trial. *Id.* at 985. This court found that even though the *Brown* test was not in effect at the time of the case, the evidence would have had the same result. *Id.* at 985–86. The *Estrada* court found that the trial justice's ruling that the witness's recantation was entirely incredible was justified because the witness had exhibited extensive knowledge of details of the crime with which the defendant was charged, details that he could have known only had he been present as he originally stated. *Id.*

■ When the testimony of the recanting witnesses is contradicted by other witnesses, by facts and circumstances, and by their prior statements, the trial justice is justified in finding those recantations incredible. *Correia v. Norberg*, 120 R.I. 793, 800, 391 A.2d 94, 98 (1978). "The trier of fact may * * * reject testimony containing 'inherent improbabilities or contradictions which, alone or in conjunction with other circumstances in evidence * * *' satisfy him that the testimony is false." *State v. Duggan*, 414 A.2d at 792 (quoting *Correia v. Norberg*, 120 R.I. at 800, 391 A.2d at 98). Relying upon the evidence before the trial justice, we are of the opinion that he was justified in finding the recanting witnesses incredible.

■ The findings and decisions of a trial justice should not be disturbed unless it is clearly shown that such an exercise of his or her discretion is improper or an abuse. *Levy v. Equitable Fire & Marine Insurance Co.*, 88 R.I. 252, 254, 146 A.2d 231, 233 (1958); *Durepo v. Watson*, 75 R.I. 51, 53, 63 A.2d 570, 571 (1949). This court will not disturb the decision of a trial justice on a motion for a new trial unless that decision was clearly wrong or unless the trial justice, in reviewing the evidence, overlooked or misconceived relevant and material evidence. *State v. Henshaw*, 557 A.2d 1204, 1207 (R.I.1989); *State v. Estrada*, 537 A.2d at 986. On review we must address whether the trial justice was clearly wrong in finding the proposed recantations incredible or whether he overlooked or misconceived material evidence adduced at the hearing. Because the trial justice was

presented with conflicting testimony and evidence, he was able to make sound credibility findings by assessing the facts and the totality of the circumstances before him.

The defendant must demonstrate by a preponderance of evidence that the trial justice was clearly wrong. *State v. Duggan*, 414 A.2d at 792; *Palmigiano v. Mullen*, 119 R.I. 363, 374, 377 A.2d 242, 248 (1977). At the hearing for postconviction relief, the trial justice heard testimony from all the witnesses and directly observed each witness's demeanor. The applicant has not demonstrated by a preponderance of the evidence that the trial justice was clearly wrong in his credibility assessment of the proposed recantations. To find that the trial justice was clearly wrong would be to conclude that the recantations of the complaining witnesses were in fact believable and true. Because there were differing versions of facts presented, not solely one uniform corroborated version of facts, we cannot find that the trial justice was clearly wrong or abused his discretion. This court will not act as the arbiter of credibility in this case because that remains a determination that is expressly entrusted to the trial justice.

This court has found that when the party's appellate argument essentially proposes that the trial justice should have believed his witnesses rather than those presented by the state, "[s]uch an argument is appropriate in a trial court but not in this court." *Doyle v. State*, 430 A.2d 416, 418 (R.I.1981). In *State v. Chatell*, 121 R.I. 528, 531, 401 A.2d 436, 437–38 (1979), the trial justice believed one version of the facts and disbelieved the defendant's testimony. "The defendant's argument on appeal is essentially that the trial justice should have believed his testimony rather than the testimony of the state's witnesses. That argument is properly addressed to the trial court and is inappropriate in appellate proceedings." *Id.* As applicant's argument is essentially the same in the case before us, we find it without merit and similarly inappropriate before this court.

The applicant states that the trial justice was clearly wrong by reason of his overlooking and misconceiving significant material evidence. This evidence to which applicant refers consists of facts regarding Jane D.'s behavioral history as an alcoholic drug abuser, her demeanor that indicated something other than truth telling during the police questioning, the fact that Jane D. wrote letters to applicant, the state's failure to introduce medical evidence regarding applicant's alleged penetration of Jane D., John R.'s conduct as suggestive of something other than truth telling, the inconsistency in John R.'s statement, the testimony of applicant's wife, and the existence of animosity between Mary M.'s family and the Fontaine family. We are of the opinion that this is not a situation in which the trial justice overlooked or misconceived significant material evidence but rather one in which the trial justice examined and considered all the facts and evidence presented in determining the credibility of the recanting witnesses. The trial justice did not overlook or misconceive evidence, but rather made a credibility determination in which he believed one set of facts and disbelieved the other set of facts. The trial justice's determination does not constitute error and is not clearly wrong because he assessed the evidence before him in making a reasoned determination. We therefore decline to grant applicant relief on this basis.

The applicant next asserts that the trial justice failed to comply with this court's instruction to weigh the recantation testimony "in light of the defendant's admissions in open court or by affidavit of the factual basis for his plea." *State v. Fontaine,* 559 A.2d at 625. The applicant states that he had maintained his innocence throughout the progression of the case, making few factual admissions and pleading nolo contendere on the perceived strength of the state's case in order to obtain a more lenient sentence in light of the possible term he faced if he went to a full trial based on the charges against him.

The applicant appears to indicate that because he maintained his innocence by executing a document, the fact that wit-

nesses are purporting to recant has a significant impact on the proceedings. The issue of the recanted testimony centers not on whether the witnesses actually recanted but on whether the recantations are credible, true in fact, and therefore sufficient and reliable evidence upon which to grant applicant's requested postconviction relief.

This court will not vacate a plea unless the record, in its totality, discloses no facts by which the trial justice could be satisfied that there exists a factual basis for a defendant's plea. *State v. Feng*, 421 A.2d at 1269. In the present case the trial justice's finding the proposed recantation testimony incredible places the status of the facts where it was before the hearing, still providing sufficient bases to support applicant's pleas of nolo contendere. We are of the opinion, therefore, that the trial justice did consider the extent of applicant's admissions made at the time of the pleas in making his determination.

█ In charging that the trial justice failed to consider the extent of the admissions made at the time of the pleas and to weigh the recantations in the light thereof, applicant appears to assert that because he admitted certain facts based on the proposed testimony from the complaining witnesses, and because these witnesses are purporting to recant, this has an impact on his admissions and the pleas. Because this case primarily involves a credibility issue, the trial court must have first determined whether the recantations were true in fact and believable before assessing the accepted recantations in light of applicant's pleas and admissions. We decline to find that merely because the complaining witnesses have purported to recant their allegations of criminal activity perpetrated upon them by applicant, there now exist no factual bases for applicant's admissions. Before these alleged recantations .can be considered valid, with no bases remaining for applicant's nolo contendere pleas, the primary issue is whether the recantations are credible and true, constituting newly discovered evidence that merits granting postconviction relief and vacating applicant's pleas. In order to vacate his pleas because

there exist no factual bases for them, the evidence presented must be credible, demonstrating that the recantations are true in fact and that the complaining witnesses' original statements of crimes perpetrated upon them by applicant were false. Because the trial justice found no truth in the recantations at the threshold inquiry, there is no impact on applicant's admissions and pleas that requires this court to reverse the trial justice's decision and order him to grant postconviction relief.

The applicant finally argues that the trial justice was clearly wrong because he failed to consider that the only time the complaining witnesses testified under oath in open court, they both swore that no assaults had occurred. We find this argument to be without merit because the applicant fails to address the fact that the witnesses initially had made statements to the police that supported criminal charges and that the witnesses were prepared to testify in court prior to the applicant's pleading nolo contendere. The applicant's pleas thus eliminated the need for the complaining witnesses to testify to their allegations in open court and under oath. The applicant appears to imply that because the recantations are under oath, they are more credible than the previous statements in which the complaining witnesses asserted that the applicant had criminally assaulted them. This is part of the evidence involved in the credibility issue that the trial justice weighed in his determination. The trial justice's failure to accept the recantation testimony as true was not clearly wrong or an abuse of discretion as two factual versions were presented. The fact that the complaining witnesses did not initially testify to the charges alleged in open court does not automatically discredit their original charges of criminal conduct perpetrated by the applicant. We therefore decline to grant the applicant's requested relief on this basis.

For the reasons stated, the applicant's appeal is denied and dismissed. The applicant has failed to demonstrate that the trial justice was clearly wrong and abused his discretion or that he overlooked or misconceived significant material evidence in find-

ing the recantations of the complaining witnesses incredible, thereby denying the applicant postconviction relief. The judgment of the Superior Court is affirmed, and the papers of this case are remanded to the Superior Court with our decision endorsed thereon.