STATE

v.

**Demetrius JACKSON.**

**No. 98–58–C.A.**

Supreme Court of Rhode Island.

May 2, 2000.

Jane M. McSoley, Aaron L. Weisman, Providence, for Plaintiff.

Catherine Gibran, Paula Rosin, Providence, for Defendant.

Present WEISBERGER, C.J., and LEDERBERG, BOURCIER, FLANDERS, and GOLDBERG, JJ.

**O P I N I O N**

LEDERBERG, Justice.

Roger Williams Park was the backdrop for a brief but violent struggle that ended with the death of a park ranger and the serious injury of a Providence police officer. The defendant, Demetrius Jackson, has appealed from convictions resulting from the confrontation. For the reasons set forth below, we deny and dismiss the appeal and affirm the convictions in all respects.

**Facts and Procedure**

Shortly after midnight on October 12, 1995, an anonymous caller informed the Providence Police Department that two males wearing dark clothing and carrying guns were walking through Roger Williams Park (park) in Providence, Rhode Island. Park Ranger William Abrahamson (Abrahamson), spotted the trespassers, as did Providence police officer Brian Quirk (Quirk), who was responding to a dispatcher's alert. Quirk and Abrahamson left their vehicles and approached the two youths, later identified as defendant and Jason Lee (Lee).

The defendant was carrying a large knapsack that appeared to be sagging under the weight of its contents. Initially, the young men ignored Quirk's orders to "stop and raise [your] hands and drop to [your] knees." Quirk then drew his gun, and Abrahamson, who was unarmed, fell in behind him. Eventually, defendant and Lee obeyed Quirk's commands and placed their hands on the police cruiser. Quirk holstered his gun and began "patting down" defendant. At that point, defendant spun around and drew a .38–caliber revolver that he had concealed in the waistband of his trousers. Quirk attempted to wrest the gun from defendant's grip, and a struggle ensued.

As the pair wrestled for control of the gun, Patrolman Edward Ryan (Ryan) and Sergeant Walter Chin (Chin) arrived separately at the scene. Although the struggle was over within a matter of seconds, five shots were fired by defendant, three of which made contact with their targets: one bullet struck Abrahamson in his abdomen, one hit Quirk in his left elbow, and the last hit Quirk in his right arm. Quirk and defendant fell backwards in opposite

directions. The defendant then pointed his gun at Chin's head.

As the gunman regained his footing and headed toward a nearby lake, Chin and Ryan ordered him to stop. When he ignored their commands, one or more of the officers fired at defendant, and he was struck by a bullet in the leg. He fell into the lake, and Chin pulled him from the water. The defendant was handcuffed, taken into police custody, and treated at Rhode Island Hospital for his gunshot wound, as were Abrahamson and Quirk. Unable to survive the massive blood loss he suffered from the gunshot wound, Abrahamson died six days later.

Later in the morning of the shooting, police searched the park and recovered the .38–caliber revolver and five spent .38–caliber shell casings. A search of defendant's knapsack revealed a loaded sawed-off shotgun, a box filled with twenty live rounds of .38–caliber ammunition, and two live sixteen-gauge shotgun shells. The bullets lodged in the bodies of Abrahamson and Quirk and a bag containing two sixteen-gauge shotgun shells, three twelve-gauge shotgun shells, and seventeen live .38–caliber rounds were seized at the hospital.

The defendant subsequently was charged by indictment on five counts: count 1, the murder of Abrahamson; count 2, assault with intent to murder Quirk; count 3, assault with a dangerous weapon upon Chin; counts 4 and 5, carrying a revolver without a license and possession of a sawed-off shotgun, respectively. The defendant was tried before a jury that returned a verdict of guilty of second-degree murder and guilty on the remaining charges. After hearing and denying defendant's motion for a new trial, the justice subsequently sentenced defendant to fifty years incarceration for the murder conviction, twenty years each for assault with intent to murder and assault with a dangerous weapon, and five years for each weapons charge, all to run consecutively. A timely notice of appeal was filed.

## Motion for Judgment of Acquittal

The defendant's first assertion of error was that the trial justice erred in denying his motion for judgment of acquittal on the charge of assault with a dangerous weapon upon Chin, in violation of G.L.1956 § 11–5–2. The defendant's argument in this respect was twofold. First, he urged us to hold that a defendant's actual present ability to inflict harm on the victim with the weapon is an element of assault with a dangerous weapon. Second, defendant contended that he lacked the actual present ability to harm Chin because his weapon had fired all its ammunition by the time defendant allegedly pointed it at the police officer.

Under Rule 29(a) of the Superior Court Rules of Criminal Procedure,

> "[t]he court on motion of a defendant or of its own motion shall order the entry of judgment of acquittal of one or more offenses charged in the indictment, information, or complaint after the evidence on either side is closed if the evidence is insufficient to sustain a conviction of such offense * * *."

We have consistently held that when a motion for judgment of acquittal is presented, the trial justice must view the evidence in the light most favorable to the state, drawing all reasonable inferences consistent with the guilt of a defendant. *State v. Robertson*, 740 A.2d 330, 332 (R.I. 1999); *State v. Lamoureux*, 573 A.2d 1176, 1181 (R.I.1990). In deciding such a motion, the trial justice may not consider either the weight of the evidence or the credibility of the witnesses. *Lamoureux*, 573 A.2d at 1181. This Court reviews the denial of a motion for judgment of acquittal by the same standard as that applied by the trial justice, namely, by viewing the evidence in the light most favorable to the state, without weighing the evidence or assessing the witnesses' credibility. *State v. Snow*, 670 A.2d 239, 243 (R.I.1996);

*State v. Henshaw*, 557 A.2d 1204, 1206 (R.I.1989).

The statutory definition of "felony assault" in § 11–5–2(a), states in part, that "[e]very person who shall make an assault or battery, or both, with a dangerous weapon * * * or an assault or battery which results in serious bodily injury, shall be punished by imprisonment for not more than twenty (20) years." Because statutory definitions are not given, the common law established by our cases has defined the terms "assault" and "dangerous weapon." We have held that assault with a dangerous weapon is

> "any unlawful offer to do corporal injury to another under such circumstances as may create a reasonable apprehension of immediate injury unless the person so threatened takes action or inaction to avoid it, coupled with a present ability to carry the offer into effect." *State v. Jeremiah*, 546 A.2d 183, 186–87 (R.I. 1988).

The state has argued that our holding in *State v. Andrade*, 657 A.2d 538, 543 (R.I. 1995), essentially vitiated the "present ability" element of assault with a dangerous weapon. The defendant in *Andrade* was convicted of assault with a dangerous weapon even though the weapon at issue was never admitted into evidence. *Id.* at 542. Raising an argument similar to the one raised here, Andrade asserted that, absent actual proof of an operative weapon, there was insufficient evidence for the jury to find that he had the present ability to inflict injury. *Id.* Notwithstanding the absence of a weapon in *Andrade*, we concluded that the jury could infer that Andrade had wielded an operative pistol based on the eyewitness testimony describing his actions and statements. *Id.* at 543. We therefore affirmed the trial justice's denial of Andrade's motion for judgment of acquittal. *Id.*

■ With respect to the case *sub judice*, it is our opinion that an individual armed as defendant was with operable guns and an arsenal of ammunition can be charac-

terized as having the present ability to inflict injury with a dangerous weapon. Sergeant Chin observed defendant fire several shots, some of which hit their presumed targets. Chin reasonably believed that defendant possessed a weapon which could inflict injury on him as well. But for the restraint of an armed officer, defendant could well have reloaded his weapon from the supply he carried. Under these circumstances, the trial justice was clearly correct in denying defendant's motion for judgment of acquittal.

The state has suggested that we apply to this case the United States Supreme Court's ruling in *McLaughlin v. United States*, 476 U.S. 16, 17–18, 106 S.Ct. 1677, 1678, 90 L.Ed.2d 15, 18 (1986). *McLaughlin* interpreted the words "dangerous weapon" in the context of the federal bank robbery statute. *Id.* at 16–17 & n. 1, 106 S.Ct. at 1678 & n. 1, 90 L.Ed.2d at 17–18 & n. 1. The Court in *McLaughlin* held that an unloaded gun constituted a "dangerous weapon" under the statute and offered three independent reasons in support thereof:

> "First, a gun is an article that is typically and characteristically dangerous; the use for which it is manufactured and sold is a dangerous one, and the law reasonably may presume that such an article is always dangerous even though it may not be armed at a particular time or place. In addition, the display of a gun instills fear in the average citizen;[ ] as a consequence, it creates an immediate danger that a violent response will ensue. Finally, a gun can cause harm when used as a bludgeon." *Id.* at 17–18, 106 S.Ct. at 1678, 90 L.Ed.2d at 18.

■ Although we are persuaded that the present ability rule may well be outdated and that *McLaughlin's* dangerous weapon interpretation represents the better rule, we refrain from applying such a holding in this case without prior notice to litigants. Henceforth, however, in future cases we shall apply the *McLaughlin* rule

under which we shall presume that an unloaded but operable gun possesses a per se "present ability to carry the offer [to do corporal injury to another] into effect." *Jeremiah*, 546 A.2d at 187.

### Motion to Exclude Evidence

■■■ Next, defendant argued that the trial justice abused his discretion when he denied defendant's motion to exclude certain evidence. Specifically, he contended that the live ammunition seized from him at the scene, as well as the live rounds seized at the hospital, were irrelevant because they were unrelated to the crimes charged. Moreover, defendant argued, the evidence was highly prejudicial because the sheer volume of shells could lead the jury to infer that defendant either was predisposed to commit a crime of violence or was involved in other illegal activities. Additionally, defendant objected to the admission into evidence of the handgun and the bullets seized from Lee.

Relevant evidence has been defined as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Rule 401 of the Rhode Island Rules of Evidence; *State v. Pratt*, 641 A.2d 732, 741 (R.I.1994). Although relevant evidence is generally admissible whereas irrelevant evidence is not, Rule 402, relevant evidence may be excluded if the danger of unfair prejudice resulting from its admission substantially outweighs the probative value of the evidence. Rule 403. The admission or exclusion of evidence on grounds of relevancy is committed to the sound discretion of the trial justice, whose decision will not be reversed unless the admission constitutes an abuse of discretion. *State v. Marini*, 638 A.2d 507, 516 (R.I.1994).

In this case, the evidence was highly relevant in establishing certain elements of the crimes charged. As the trial justice aptly remarked,

"[This evidence is] very relevant. * * * The ammunition fits the firearms that are in question. The man is charged with intentionally killing somebody. He is charged with knowingly possessing, carrying firearms. The very fact that he had ammunition that fit those firearms also goes to his state of mind; that he knows that these firearms are operable and work, and he has got ammunition for them."

We further agree with the trial justice that the probative value of this evidence outweighed any alleged prejudicial effect. The instant case is distinguishable from cases cited by defendant, such as *State v. Brash*, 512 A.2d 1375, 1383 (R.I.1986), in which we held that the relevance of a large number and wide variety of guns and ammunition that were admitted into evidence was outweighed by its prejudicial effect. The weapons in *Brash* were never linked to the crime charged; they were simply used for target practice at a location unconnected to the crime. *Id.* at 1382. Here, the ammunition bore witness to defendant's ability and preparedness to use the guns he carried that night, and its presence undermined defendant's allegation that the shots were fired accidentally.

Although defendant complained that the sheer volume of bullets rendered their admission unduly prejudicial, it is our opinion that what could be described as a "small mobile arsenal" was highly probative of defendant's preparedness for events like the unfortunate ones that occurred on the night of the shootings. Indeed, we agree with the trial justice that their "relevance is far in excess of whatever prejudice [defense counsel thought] might inure to [his] client." Therefore, there was no abuse of discretion in admitting the evidence. *See State v. Evans*, 742 A.2d 715, 720 (R.I. 1999) (admitting a .38-caliber revolver into evidence was not an abuse of discretion because the jury reasonably could infer that the gun was connected to the crime charged).

## Motion for a Mistrial

The defendant next argued that the trial justice erred in refusing to declare a mistrial after the trial justice commented on the redirect examination testimony of Chin. The exchange went as follows:

"Q You saw [defendant] look at you?

"A Yes.

"Q And you used the words on cross-examination in that question you said, 'He knew I was there.' Do you remember saying that?

"A Yes.

"Q And how did you know that?

"[DEFENSE COUNSEL]: Objection.

"THE COURT: [Defense counsel], he shows up, cruiser lights flashing, got a uniform on. Please. Overruled.

"Q Just—

"A When he looked at me he knew I was a police officer.

"Q One more question. You had on—

"[DEFENSE COUNSEL]: Objection, move to strike the answer.

"THE COURT: Overruled."

At the conclusion of Chin's testimony, defense counsel requested a side bar conference, to which the trial justice responded, "later." Shortly thereafter, the trial justice, *sua sponte,* addressed the jury, stating, "[R]ethinking Chin's testimony, * * * I think it would be speculation for us to assume that [defendant] actually knew that Chin was a police officer. So, you will have to make your own determination in that regard."

Improper comments by a trial justice may be grounds for a new trial. *State v. Wiley,* 567 A.2d 802, 805 (R.I. 1989). The decision to pass a case and declare a mistrial is left to the sound discretion of the trial justice. *State v. Kryla,* 742 A.2d 1178, 1186 (R.I.1999) (citing *State v. Figueroa,* 673 A.2d 1084, 1091 (R.I. 1996)). In reviewing such a decision, we shall accord great deference to the trial justice because "he or she possesses 'a

"front row seat" at the trial and can best determine the effect of the improvident remarks upon the jury.'" *Figueroa,* 673 A.2d at 1091 (quoting *State v. Tempest,* 651 A.2d 1198, 1207 (R.I.1995)). Therefore, a trial justice's determination "will not be disturbed unless it is shown to be clearly wrong." *Kryla,* 742 A.2d at 1186.

In the case at bar, the trial justice indicated that it was clear that defendant knew that Chin was a police officer when defendant took aim at him, a finding that properly should have been made by the jury. Certainly, the remark was improper, although it was not sufficiently prejudicial to warrant the granting of a mistrial. Moreover, the trial justice's contemporaneous cautionary instruction effectively cured any prejudice. *See State v. Toole,* 640 A.2d 965, 975 (R.I.1994) (timely and effective curative instruction remedied any prejudice resulting from the prosecutor calling defendant a "sick criminal"). We conclude, therefore, that the trial justice did not abuse his discretion in denying defendant's motion to pass the case.

## Motion for a New Trial

The defendant's final claim of error is that the trial justice failed to grant defendant a new trial on his convictions of second-degree murder and assault with intent to commit murder. He contended that reasonable minds could not have found that he possessed the intent to kill either Abrahamson or Quirk.

A trial justice considering a motion for a new trial acts as "a thirteenth juror and exercises independent judgment on the credibility of witnesses and on the weight of the evidence." *State v. Banach,* 648 A.2d 1363, 1367 (R.I.1994). We often have explained that ruling on such a motion requires the trial justice to perform at least three analyses. "First, the trial justice must consider the evidence in light of the charge to the jury; second, the trial justice must determine his or her own opinion of the evidence; third, the trial

justice must determine whether he or she would have reached a different result from that of the jury." *Snow*, 670 A.2d at 243. If the trial justice concludes the analysis by reaching the same determination as did the jury, the motion for a new trial should be denied. *Id.* at 244. The motion also should be denied if the justice determines that reasonable minds could have differed in reaching the verdict. *State v. Doctor*, 690 A.2d 321, 329 (R.I.1997).

 On review, this Court will not second-guess the trial justice, and we shall affirm the result "unless the decision is clearly wrong or unless the trial justice, in reviewing the evidence, overlooked or misconceived relevant and material evidence." *Id.* (quoting *State v. Estrada*, 537 A.2d 983, 986 (R.I.1988)). In ruling on a motion for a new trial, the trial justice is not required to refer to all the evidence upon which he or she based his or her decision, "but need only mention sufficient evidence to allow this [C]ourt to discern whether the appropriate standard was applied." *Id.* (quoting *State v. Dame*, 560 A.2d 330, 333 (R.I. 1989)).

With respect to the conviction of assault with intent to commit murder in this case, the trial justice provided ample support for his conclusion that, "At best, * * * perhaps reasonable minds could differ after considering all the evidence." The trial justice found that the large amount of ammunition that fit the guns defendant carried demonstrated that he was "intent on doing serious harm to somebody." The trial justice found persuasive the fact that defendant had expended all five chambered bullets. Moreover, the fact that the revolver's trigger required eleven pounds of pressure for firing indicated that the act of shooting only could have been intentional, not accidental. In addition, the trial justice reviewed the testimony of Chin, who saw defendant extend his arm and point the gun at Abrahamson and then turn the revolver on Quirk and fire again.

The trial justice similarly buttressed his denial of the motion for a new trial concerning the conviction of assault with a dangerous weapon. He believed Chin's account that the defendant pointed the gun directly at him. Thus, the trial justice did not overlook or misconceive relevant and material evidence, and his denial of the defendant's motion for a new trial was not clearly wrong. *Doctor*, 690 A.2d at 330–31.

In conclusion, therefore, for these reasons, we deny and dismiss the defendant's appeal and affirm the judgment of the Superior Court to which the papers in this case may be returned.