STATE

v.

**Charles BROWN.**

**No. 84–507–C.A.**

Supreme Court of Rhode Island.

July 17, 1987

---

James E. O'Neil, Atty. Gen., Jane M. McSoley, Annie Goldberg, Asst. Attys. Gen., for plaintiff.

William Reilly, Public Defender, Barbara Hurst, Asst. Public Defender, Providence, for defendant.

## OPINION

FAY, Chief Justice.

The defendant, Charles Brown (Brown), appeals from a Superior Court jury conviction on a one-count indictment for the murder of Holly Boyd (Boyd). The jury found Brown guilty of second-degree murder in the slaying and he was sentenced to the Adult Correctional Institutions for thirty years. The court ordered him to serve the first twenty-five years of his sentence, it suspended the remaining five years and placed him on probation for five years to commence upon his release. We affirm the conviction but remand the case for resentencing.

This sad tale of ill will toward men takes us back to the height of the Yuletide season, Christmas night, 1982. At approximately 11 p.m. on that night Boyd, accompanied by Gary Adams, arrived at an establishment known as the 11–11 Club (the club). The club is a discotheque-bar located on North Main Street in Providence.

Sometime around 2 a.m. on December 26, a fight involving three women, one identified as Boyd and another identified as Brown's sister, Janie "Porky" Brown, erupted inside the club near the doorway entrance. Several other individuals soon joined in the action. The club's bouncers interceded and escorted the women outside; however, the peace was short-lived as the women, once outside, refused to leave and began to fight again. The bouncers again interceded to break up the altercation.

After the second altercation was terminated, Brown was seen running to his automobile, opening the door, reaching under his seat, and extracting a hunting knife. He then proceeded to chase Boyd around the parking lot with the knife. Boyd, in attempting to elude Brown, ran out into North Main Street; Brown followed close behind. When they reached the center divider line of the street, Boyd turned, Brown swung the knife hitting her in the upper part of her arm, and they both fell to the ground. Boyd got up and ran to the far side of the street near the Ethan Allen furniture store building; Brown got up and continued the chase. When they reached the other side, Boyd fell down again, and Brown was observed standing over her and making a striking type motion at her.

The police arrived shortly after to find Boyd lying in front of the Ethan Allen furniture store bleeding and unconscious. They also found two other people who had been stabbed during the altercations. Boyd suffered three stab wounds, one to the right arm, one to the right leg, and one to the chest. The chest wound was determined to be the cause of death.

Brown raises several issues on appeal; where necessary we shall include additional facts.

# I

## EVIDENCE OF DEFENDANT'S FLIGHT TO NEW YORK

The first argument we will take up concerns Brown's allegation that the trial justice abused his discretion in permitting the state to introduce evidence of Brown's alleged "flight" to New York because it was irrelevant and because it was offered in violation of Rule 16 of the Superior Court Rules of Criminal Procedure.

### A

In *State v. Cooke*, 479 A.2d 727 (R.I. 1984) we adopted the fourprong test for determining the relevancy of flight evidence from the United States Court of Appeals for the Fifth Circuit. *See United States v. Myers*, 550 F.2d 1036 (5th Cir. 1977). We indicated in *Cooke* that the relevancy of flight from the crime scene as circumstantial evidence of a defendant's guilt depended upon "the degree of confidence with which a chain of inferences can be followed: (first inference) something the defendant did led him to flee, (second inference) he fled out of consciousness of guilt, (third inference) his consciousness of guilt derived from consciousness of guilt concerning the crime charged, and (fourth inference) his consciousness of guilt concerning a crime charged reflects actual guilt of the crime charged." *Cooke*, 479 A.2d at 732–33. We went on to say that "the linchpin of flight as probative of guilt is a defendant's knowledge of the reason why he is fleeing and that the reason he is fleeing is related to the crime on trial." Id. at 733.

Because of the difficulty in establishing the third and fourth inferences, courts generally place great reliance on the proximity in time between the flight and the crime charged in order to establish these inferences. *United States v. Howze*, 668 F.2d 322, 324–25 (7th Cir. 1982). Hence, when the time lapse between the flight and the crime charged is great, "the court must be certain there is evidence that a defendant knows he is being sought for the specific crime charged and not some other crime or event." *Id.* at 325. Conversely, if flight occurs shortly after the crime, the need to establish that the defendant knows he is fleeing from the specific crime charged becomes less crucial, and the probative value of the flight evidence becomes much more important. *Cooke*, 479 A.2d at 733.

Here, Detective Arnold Shone testified that from late December 1982 through January 1983, he went to Brown's home half a dozen times with an arrest warrant but that he could not locate Brown. Detective Shone informed Brown's mother, who lived with Brown, that the Providence police had a warrant for her son's arrest for the murder of Boyd. She in turn told him that she did not know her son's whereabouts. Based on further investigation, the police traced Brown to New York City and Detective Shone arrested him there on February 15, 1983.

Brown, testifying in his own behalf, stated that he left Providence the night of December 26 for New York to visit his uncle, that the trip was planned prior to Christmas, and that two days after the stabbing he learned about the arrest warrant issued against him. Brown stayed in New York for a week, returned home for two weeks, but then left for New York again because "[when] the police came by after they found out where my mother lived * * * they told her they'd shoot me on sight, and * * * I wasn't going to stay around for something I didn't do." Brown subsequently traveled from New York to Philadelphia to visit his grandfather, came back to Providence again, and then went back to New York before being arrested there.

Brown contends that so long as the state did not conclusively prove that he actually knew, prior to leaving for New York on December 26, that the police had a warrant for him in connection with the Boyd murder then the evidence of flight was inadmissible. Brown's argument misses the mark. The critical factor to the admissibility of evidence of flight is not whether the defendant has actual knowledge that he is fleeing from the specific crime charged; rather, it is whether the

totality of the evidence creates an inference that he had knowledge. And the more immediate in time the flight is to the crime charged, the stronger the inference.

■ Here the evidence of Brown's flight to New York was relevant and, therefore, properly admitted. His flight from Providence was immediate, and although he may not have known when he left that the police had a warrant for his arrest, by his own admission, he certainly knew two days later that they were searching for him, and he also knew why they were looking for him. This actual knowledge certainly was more than sufficient to establish an inference that Brown knew why he was fleeing and that that reason was related to the crime of murder.

### B

Brown also contends that the evidence of flight was admitted in violation of Rule 16 since the state never notified the defense that Detective Shone would give testimony about Brown's flight to New York.

Although Detective Shone was listed in the state's response to discovery as a witness for trial, the state failed to give any indication of what the detective would testify to. In response to a subsequent defense motion to compel disclosure of Detective Shone's anticipated testimony, the state responded on November 29, 1983:

"Det. A. Shone will testify consistent with the attached police narrative. Det. Shone will also testify to witnessing the statements given by Felicia Delgardo, Wayne Costa, Richard DeRobbio and Walter Catlin."

Since the state never said that Shone would testify about Brown's flight, and since none of the other police statements or summaries contained in the state's discovery response concerned the police attempts to locate Brown or to arrest him, Brown claims the evidence of flight should have been precluded by the trial justice.

The trial justice's failure to do so, according to Brown, warrants this court's reversal of the conviction and entitles Brown to a new trial.

■ Rule 16(i) provides sanctions for the failure of either party to comply with discovery.[1] We have stated that the imposition of any Rule 16 sanction is a matter within the sound discretion of the trial justice. *State v. Concannon,* 457 A.2d 1350, 1353 (R.I. 1983); *State v. Coelho,* 454 A.2d 241, 245 (R.I. 1982). In this case the trial justice found that "Rule 16 has been complied with, if not total [*sic* ], at least in [the] spirit of which it was intended." The trial justice was incorrect in his conclusion.

■ Consequently, on appeal, it is our task in selecting an appropriate sanction for a discovery violation to consider, "(1) the reason for nondisclosure, (2) the extent of prejudice to the opposing party, (3) the feasibility of rectifying that prejudice by a continuance, and (4) any other relevant factors." *Coelho,* 454 A.2d at 245; *see also State v. Wyche,* 518 A.2d 907, 911 (R.I. 1986). If the violation is inadvertent in nature we look to determine whether the opposing party has been prejudiced by nondisclosure. It is the defense's burden, in a situation like this, to establish that, had the information been disclosed, there is a likelihood that defense counsel could have used that information to create a reasonable doubt in the minds of one or more jurors. *Concannon,* 457 A.2d at 1354.

■ The record before us indicates that the state did give a partial indication of what Detective Shone could be expected to testify about at trial. Without evidence to the contrary, we can only assume that the nondisclosure of the evidence of flight was inadvertent rather than deliberate. Moreover, we cannot say that Brown was actually prejudiced by the nondisclosure since the evidence presented through three witnesses identified Brown as the perpetrator of the murder. Therefore, we are of the opin-

---

1. Rule 16(i) of the Superior Court Rules of Criminal Procedure states:

"Failure to Comply. If at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with this rule or with an order issued pursuant to this rule, it may

order such party to provide the discovery or inspection, grant a continuance, or prohibit the party from introducing in evidence the material which or testimony of a witness whose identity or statement were not disclosed, or it may enter such other order as it deems appropriate."

ion that any error committed in admitting evidence of flight was harmless beyond a reasonable doubt in light of the overwhelming evidence of guilt.

## II
### CAUTIONARY INSTRUCTION

Brown next takes issue with the trial justice's failure to grant a defense motion for mistrial after a prosecution witness indicated that Brown previously had been incarcerated. Brown claims the trial justice's cautionary instruction on the issue was insufficient to dispel the prejudicial taint of the testimony.

During the prosecution's direct examination of one of its witnesses, the following exchange occurred:

> "[Prosecutor]: How do you know Charles Brown?
>
> "[Witness]: I met him at the training school.
>
> "[Prosecutor]: Could you point to Charles Brown?
>
> "[Witness]: (Indicating).
>
> "[Prosecutor]: Which one are you pointing to?
>
> "[Witness]: In the middle."

It was at that point that defense counsel asked to be heard at side bar.

At side bar Brown's attorney moved to pass the case citing the witness's comment about knowing Brown at the training school and indicating his belief that the jury was prejudiced by the answer. The trial justice declined to pass the case, finding the comment not to be prejudicial enough to justify such a disposition. He chose instead to give the jury the following instruction.

> "Ladies and gentlemen of the jury, a remark was made by the witness to the effect that he knew the defendant at the training school. You are now instructed to ignore that and to dispel that particular answer from your mind and your deliberation. It has no value with respect to the testimony of this witness. Is that understood, ladies and gentlemen? Just strike it from your minds, that the defendant claims he knew the defendant—that this witness knew the defendant at the training school."

It is within the trial justice's sound discretion to pass a case and declare a mistrial. *State v. Brown,* 522 A.2d 208, 210 (R.I. 1987). On appeal we shall give great deference to the trial justice's decision and will not disturb it unless it is clearly wrong. *State v. Fernandes,* 526 A.2d 495, 498 (R.I.1987). If a defendant objects to a remark as prejudicial the trial justice must determine the potential prejudice that the statement might have on the outcome of the case by examining the statement in its full factual context. *Id.; State v. Collazo,* 446 A.2d 1006, 1010 (R.I. 1982).

Our cases have also recognized that the trial justice has a duty, if at all possible, to attempt to "free the evidence from such [harmfulness] * * * with [a] proper warning to the jury." *State v. Peters,* 82 R.I. 292, 297, 107 A.2d 428, 430–31 (1954) (quoting from *Lavigne v. Ballantyne,* 66 R.I. 123, 126, 17 A.2d 845, 846 (1941)). If the trial justice believes that a cautionary instruction will not suffice, then consideration should be given to passing the case. Since the trial justice in this case chose to utilize a cautionary instruction, the question before us is whether his instruction "can be fairly said to have removed from [the jurors' minds], when weighing the evidence properly before them, the taint represented by the enveloping smoke of a criminal record." *State v. Costa,* 111 R.I 602, 610, 306 A.2d 36, 40 (1973). We believe that it did.

We do not believe that the objectionable testimony was of such significant taint to have impaired Brown's right to a fair and impartial trial. What taint existed was sufficiently removed from the jury's consideration by the trial justice's instruction to disregard the statement because such information was of no value. In addition we find the statement, in light of the full context of the trial, harmless given the prosecution-witness accounts that identified Brown as the person wielding the murder weapon.

## III

## NEW TRIAL

The third issue raised by Brown concerns the trial justice's denial of his motion for a new trial based on newly-discovered evidence. At trial, prosecution witness Jesse Durrett, one of the bouncers at the club, testified that he had seen Brown arm himself with a hunting knife, chase Boyd halfway across North Main Street, and swing the knife at her, stabbing her in the arm. He further stated that Brown and Boyd both fell at the center divider, that Boyd then got up and ran the rest of the way across the street, but that Brown remained on the center strip. It was at that point that Durrett said he turned away from the scene to keep the crowd in the bar from coming out. By the time Durrett turned back to the scene he saw Brown standing over Boyd in front of the Ethan Allen furniture store, surrounded by a crowd of people.

Sometime after trial and while the case was pending on appeal to this court, Durrett gave a statement to a private attorney. Thereafter, Brown requested that this court remand his case for a hearing on a motion for a new trial based on the ground of newly discovered evidence. We granted Brown's request and a hearing ensued in Superior Court on October 3, 1985.

At the hearing Durrett recanted significant portions of his trial testimony. He indicated at the hearing that Brown and six other people chased Boyd, that when they reached the center divider Brown stabbed Boyd and they both fell to the ground, that Boyd got up and ran to the other side of the street, that the six people chasing Boyd followed her, but that Brown got up and returned to an area near the entrance of the club without the knife. Meanwhile, according to Durrett, the six other people caught Boyd and began punching, kicking, and beating her while she lay on the ground. Brown, according to Durrett's new account, was in no way involved in this aspect of the incident.

On cross-examination Durrett attributed the contradictions and omissions in his testimony to loss of memory as well as the prosecutor's refusal to allow him to finish his answers at trial. Durrett said nothing about the discrepancies until Brown's attorney came to see him one year later.

The trial justice who presided at the trial denied Brown's motion for a new trial. The justice found it hard to believe that Durrett could have forgotten such significant portions of the events he witnessed. He also found that the witness had ample time on the witness stand at trial and was given every opportunity to tell his story. Consequently, the trial justice found Durrett's changed testimony to be incredible.

■ This court will not disturb the decision of a trial justice on a motion for new trial unless that decision is clearly wrong or unless the trial justice in reviewing the evidence overlooked or misconceived relevant and material evidence. *State v. Collazo*, 446 A.2d at 1012. In order to serve as the basis for a new trial, newly discovered evidence must actually be newly discovered since trial; the defendant must have been diligent in attempting to discover the evidence for use at the original trial; the evidence must be not merely cumulative or impeaching but must be material to the issue and be of the kind that would probably change the verdict at a new trial. *State v. Tavares*, 461 A.2d 390, 391–92 (R.I. 1983); *see also State v. Bassett*, 447 A.2d 371, 375 (R.I. 1982).

■ If the trial justice decides that the evidence meets this threshold test, it remains for the trial justice to determine whether the evidence presented is credible enough to warrant a new trial. *State v. Carsetti*, 111 R.I. 642, 652, 306 A.2d 166, 171–72 (1973). In so doing the trial justice must exercise his/her independent judgment as to the credibility of the witnesses and the weight to be given their testimony. *Id.; see also State v. Correia*, 106 R.I. 655, 663, 262 A.2d 619, 623 (1970).

■ We do not believe that the trial justice was clearly wrong or that he misconceived or overlooked material evidence in adjudging Durrett's post-trial testimony to be incredible. Our reading of the trial

record convinces us that Durrett had ample opportunity to clarify his testimony at trial but chose not to. Consequently, we will not disturb the trial justice's decision.

## IV

### RIGHT OF ALLOCUTION

Brown's final argument before this court concerns the trial justice's denial of his right to allocution. Brown was sentenced on July 16, 1984. The trial justice permitted defense counsel and the prosecutor to present their arguments on sentencing; thereafter, he stated his reason for sentencing and pronounced a sentence of thirty years imprisonment, twenty-five to serve, five years suspended and five years probation.

The trial justice afforded Brown no opportunity to be heard prior to the pronouncement of sentence. After the sentence was pronounced, the prosecutor requested a bench conference, at the conclusion of which the trial justice asked Brown if he had anything to say in mitigation or extenuation of sentence. Brown indicated he did not wish to say anything.

The right of allocution in this state is a right of constitutional dimension. *See* R.I. Const. art. I, § 10.[2] A defendant in a criminal prosecution has the constitutional right to address the court before the trial justice pronounces sentence. *State v. Nicoletti*, 471 A.2d 613, 618 (R.I. 1984); *Leonardo v. State*, 444 A.2d 876, 878 (R.I. 1982). Brown, in this case, was not afforded the opportunity to speak before the pronouncement of sentence. The violation of that right requires this court to remand the case for resentencing.

For the above-stated reasons the defendant's conviction is affirmed but the sentence imposed is vacated, and the case is remanded to the Superior Court for resentencing with direction to permit the defendant his constitutional right of allocution.

---

2. Rhode Island Constitution, art. I, § 10 states:
   "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury; to be informed of the nature and cause of the accusation, to be confronted with the witnesses against him, to have compulsory process for obtaining them in his favor, to have the assistance of counsel in his defense, and shall be at liberty to speak for himself; nor shall he be deprived of life, liberty, or property, unless by the judgment of his peers, or the law of the land."