DECISION
Before the Court is Derick Hazard's (defendant) Motion for a New Trial Based Upon Newly Discovered or Newly Available Evidence. Jurisdiction is pursuant to Rule 33 of the Superior Court Rules of Criminal Procedure.
On February 4, 1997, a Grand Jury of this State returned an indictment charging the defendant with one count of first degree murder, one count of assault with intent to commit murder, and two counts of conspiracy to commit first degree murder. On July 17, 1998, after a trial which commenced on July 8, 1998 and concluded on July 16, 1998, a jury found the defendant guilty of first degree murder, assault with intent to commit murder, and one count of conspiracy to commit first degree murder. On August 11, 1998, the Court denied the defendant's Rule 33 Motion for a New Trial, and on September 30, 1998, imposed a mandatory life sentence for the murder conviction, a twenty year sentence with twenty years to serve for the assault with intent to murder conviction, and a ten year suspended sentence for the conspiracy conviction, all to run concurrently. Thereafter, on December 18, 1998, the defendant, through successor counsel, filed the instant motion, and the Court permitted a period of discovery and continued investigation culminating in an evidentiary hearing which commenced on September 13, 1999 and concluded on September 14, 1999.
Our Supreme Court has recognized that in order for a defendant to prevail on a motion for new trial based upon newly discovered or available evidence, the defendant must present to the Court evidence which satisfies a two-pronged test. State v.Hernandez, 641 A.2d 62, 72 (R.I. 1994) (citing State v. Brown,528 A.2d 1098, 1104 (R.I. 1987)).
 The first prong of this test consists of a four-part evaluation. If the newly discovered evidence is to serve as the foundation for a new trial, (1) it must be newly discovered since trial, (2) the defendant must have been diligent in his or her attempts to discover the evidence for use at the original trial, (3) the evidence must not be merely cumulative or impeaching, but rather it must be material to the issue, and (4) the newly discovered evidence must be the type that would probably change the verdict at the new trial. If this four-pronged threshold analysis is satisfied, the trial justice must then determine whether the newly discovered evidence is `credible enough to warrant a new trial.'
In determining the credibility of the newly discovered evidence, the "trial justice must exercise his/her independent judgment as to the credibility of the witnesses and the weight to be given their testimony." State v. Brown, 528 A.2d at 1104 (citing Statev. Carsetti, 111 R.I. 642, 652, 306 A.2d 166, 171-72 (1973)); seealso State v. Binns, 732 A.2d 114 (R.I. 1999), State v. Krakue,726 A.2d 458 (R.I. 1999), State v. Evans, 725 A.2d 283 (R.I. 1999).
It is clear that before what is proffered as newly discovered or available evidence may be considered as a basis for a new trial, the defendant has the burden of satisfying each of the four requirements of the first part of the two-pronged test. Only if the defendant has met his burden is the Court then required to evaluate the credibility of the evidence presented to determine if it justifies a new trial.
Prior to applying the legal test to the evidence proffered in support of a new trial, the Court will summarize the pertinent testimony/evidence presented at the defendant's trial and at the evidentiary hearing on his motion.
During the trial, the State presented inter alia the testimony of Andre Williams (Williams), an eyewitness to the murder of the victim, David Andrews (Andrews). Williams testified, in relevant part: that in the late evening hours of July 18, 1996, he and Andrews were walking along West Clifford Street, in the City of Providence, when a four door motor vehicle, a cranberry or maroon colored Ford Taurus, slowly approached them from behind after a prolonged stop at a stop sign at the corner of West Clifford and Lockwood Streets; that as Andrews and he approached the intersection of Pearl and West Clifford Streets, this motor vehicle came alongside them; that he viewed four people occupying the motor vehicle, two people located in the front seat and two people located in the back seat, with the defendant located in the front passenger seat, Troy Lassiter located in the rear passenger seat, David Lassiter located in the rear driver seat, and the driver who was unidentifiable; that he heard someone from inside the motor vehicle shout "What's up now, mother. . . . (expletive deleted)"; that he then viewed the defendant and Troy Lassiter each display a firearm and then discharge that firearm several times at Andrews and him; that the firearm used by the defendant had a smaller barrel and made a softer report when discharged than the firearm used by Troy Lassiter; that after the defendant and Troy Lassiter shot Andrews, the motor vehicle quickly left the scene as Andrews ran on West Clifford Street towards Lockwood Street; that Andrews fell to the ground on Lockwood Street just around the corner of West Clifford and Lockwood Streets in front of a red picket fence; that he followed Andrews and noticed that Andrews was seriously injured and non-responsive; and that he yelled for someone to call 911 and then "flagged down" the police officer when he arrived at the murder scene.
During the trial, the State also presented Rene King (King), who testified, in relevant part, that on July 18, 1996, at about 10:55 p.m., she talked with Andrews near the intersection of Providence and Lockwood Streets, somewhere in between the intersection of Providence Street and Prairie Avenue. King testified that the conversation with Andrews lasted for approximately ten minutes, after which Andrews walked away and headed towards West Clifford Street, and that at no time while she had visual contact with Andrews did she see Williams walking with, or in the vicinity of Andrews. King also testified that a short time thereafter she heard loud sounds similar to a whole pack of fireworks, which she later learned were gun shots, and viewed a cranberry or burgundy family-size motor vehicle leaving from the direction of those gun shots.
At the trial, the defendant presented the testimony of Trenda Hazard, Kyle Hazard, Victoria Perry, Charlene Brunner, and David Lane. Each testified inter alia that on July 18, 1996, the defendant, Kyle Hazard, Dennis Marrow, Trenda Hazard, Carlton Hazard, and Franklin Dean, left Providence, Rhode Island, between the hours of 7:00 a.m. and 7:30 a.m. in two motor vehicles, traveled together in those two motor vehicles to Columbus, Ohio, and arrived at the residence of Charlene Brunner, located at 444 North Ohio, Columbus, Ohio, between the hours of 8:00 p.m. and 8:30 p.m. These witnesses also testified, in essence, that during the time of the murder of Andrews, at approximately 11:00 p.m. on the evening of July 18, 1996, the defendant was physically in their presence visiting with family and friends at the residence of Charlene Brunner as opposed to being on West Clifford Street, in the City of Providence, committing the murder of Andrews as testified to by Williams.
During the evidentiary hearing on the motion, the defendant presented to the Court the testimony of a New Jersey State Trooper, Kevin Vieldhouse (Vieldhouse), who was, and is, stationed at the Totowa Troop B State Police Barracks in New Jersey. Vieldhouse testified that on July 18, 1996, at about 10:27 a.m., he stopped a motor vehicle traveling west bound on Route 80 in New Jersey. Vieldhouse testified that he had no independent recollection of the motor vehicle stop. However, Vieldhouse submitted to the Court a Daily Activity Log for July 18, 1996, and a copy of the Written Warning issued to the driver of the motor vehicle which indicated that Vieldhouse stopped a motor vehicle with a Commonwealth of Massachusetts registration 445-XEE and issued a Written Warning, number 257280, to Kyle Hazard, the driver of the motor vehicle, for violation of N.J. Stat. Ann. § 39:4-97 (West 1990). Vieldhouse noted in the Daily Activity Log that the motor vehicle was occupied by three black males including the driver. Vieldhouse had no independent recollection of the identity of the occupants in the motor vehicle, and he could not testify whether the defendant was one of those occupants. Vieldhouse also testified that the Daily Activity Log, the Written Warning, and his testimony were all available to the defendant prior to trial if the defendant would have made an inquiry to any New Jersey State Police Barracks and provided the date and approximate location of the motor vehicle stop to the State Trooper responding to the inquiry. In fact, Vieldhouse testified that the first person to make such an inquiry to the New Jersey State Police was a news reporter who contacted him regarding the motor vehicle stop and that no one contacted him regarding the motor vehicle stop from July 18, 1996, to the start of the defendant's trial on July 7, 1998.
The defendant next presented Edward Stewart (Stewart) who testified that on the night of July 18, 1996, he received a telephone call from David Lane (Lane) regarding the weekend fishing trip which was to take place on Saturday, July 20, 1996. Stewart testified that during this telephone conversation he also talked with a second person, and although this person did not introduce himself, he recognized the voice to be that of the defendant. Stewart also testified that the defendant was with him on the fishing trip which began late Friday night and ended in the late afternoon or early evening on Saturday. Stewart also testified that the defendant did not ask him either to provide a statement to the City of Providence Police Department or to testify at the trial.
The defendant next presented John Dean (Dean) who testified that he was first introduced to the defendant sometime during the fishing trip on late Friday evening or early Saturday morning. Dean had no personal knowledge of, and he provided no evidence to the Court, as to the time the defendant allegedly arrived in Columbus, Ohio, on July 18, 1996.
The defendant also presented Conchita Brunner (Brunner) who testified, in relevant part, that the defendant was visiting with family and friends at the residence of Charlene Brunner, located in Columbus, Ohio, on the night of July 18, 1996. Brunner testified that after her work shift ended during the evening hours of July 18, 1996, she visited the home of Charlene Brunner to meet with the people who had arrived from Rhode Island. Brunner testified that the defendant was among those persons present that night and that she briefly talked with the defendant when she arrived.
The defendant next presented Raymond Griffin a.k.a. Mustafa Ali (Ali). Ali testified, in relevant part: that during the early evening of July 18, 1996, approximately two to three hours prior to the murder of Andrews, he was standing on Pearl Street in front of the basketball courts talking with Andrews, Jason Sousa, and Tajah Manning when a maroon colored motor vehicle slowly approached them; that this motor vehicle was occupied by three black males, those being Troy Lassiter, David Lassiter, and a third person which he was unable to identify, although he testified that this third person could have been Jamie Lassiter; that as the motor vehicle slowly went by he heard Troy Lassiter state to Andrews "You better get your gun because you're going to die tonight"; that later that evening, at approximately 11:00 p.m., he was standing on the corner of Providence and Pearl Streets, about one block away from West Clifford Street, when he viewed a black male approximately six feet to six feet two inches tall walk onto West Clifford Street; that although he was at least one block away from West Clifford Street and it was at night, his view through an overgrown vacant lot was unobstructed; that soon thereafter the same maroon colored motor vehicle that he saw earlier that evening followed this person onto West Clifford Street and soon thereafter he heard the gun shots; and that he then ran to the murder scene and stayed there for approximately thirty-five to forty-five minutes, leaving the murder scene soon after Andrews was put into an ambulance. Ali testified that at no time, either before or after the murder of Andrews, did he see Williams at the murder scene or in the vicinity of West Clifford and Lockwood Streets. Ali also testified that while he was at the murder scene when the police arrived, he did not make himself known or give a witness statement to the Providence Police Department and that he did not contact the defendant or the defendant's counsel prior to the trial.
The defendant next presented Temple Stevens (Stevens) who testified that on one weekday morning during the summer she talked with the defendant and other family members in front of Trenda Hazard's home, located in the City of Providence, and they stated that they were going on vacation. Stevens had no personal knowledge whether the defendant went on vacation with the other family members present that morning.
The defendant also proffered evidence that on March 10, 1999, the City of Providence Police Department confiscated certain firearms from the premises of a Lassiter family member. Additionally, evidence was presented that a firearms expert identified four .45 caliber cartridge casings found at the murder scene as being discharged from one of the pistols seized — a Ruger .45 caliber semiautomatic pistol. The expert was not able to state with a reasonable degree of certainty that the other pistol seized — an Intratec .22 caliber semiautomatic pistol — was used in the commission of the murder of Andrews. However, the expert did note some similar characteristics between the .22 caliber cartridge casings discharged from the pistol for testing purposes and the .22 caliber cartridge casings the police found at the murder scene.
During the evidentiary hearing, the State presented Ira Nasberg (Nasberg), an independent video recorder for television news stations. Nasberg submitted to the Court a video tape recording of the murder scene. Nasberg testified that he was at the murder scene for approximately one-half hour and left the scene some time after Andrews was put into an ambulance.
The State next presented Robert Muir, a Detective with the City of Providence Police Department, who, while viewing the Nasberg video tape recording, identified Williams at the murder scene as depicted at various points during the video tape recording.
The State presented Glen Cassidy, a Detective with the City of Providence Police Department, who testified that on July 18, 1996, at about 11:23 p.m., he received a radio call from the police dispatcher instructing him to respond to a reported shooting at the corner of West Clifford and Lockwood Streets. Cassidy testified that he immediately responded to that location and when he arrived he was "flagged down" by Williams. Cassidy also testified that at no time while he was at the murder scene did he observe Ali in the crowd of bystanders or in the area of West Clifford Street and Lockwood Street. Cassidy testified that he would have recognized Ali because he knows Ali's identity from prior meetings with Ali who provided information to him and another police officer, Patrolman McKnight, on various occasions prior to July 18, 1996.
After review of the evidence presented at the trial and at the evidentiary hearing, and after full consideration of the arguments made by the parties, the Court makes the following factual findings and conclusions of law concerning the testimony/evidence presented by the defendant at the evidentiary hearing.
In applying the legal test to the evidence presented by Vieldhouse, the Court finds that it is not newly discovered or newly available since the trial and, therefore, does not warrant the granting of a new trial. The defendant submitted this evidence to support the allegation that on July 18, 1996, he traveled, via motor vehicle, to Columbus, Ohio, accompanied by Kyle Hazard and Dennis Marrow. At the trial, Trenda Hazard, Kyle Hazard, Victoria Perry, Charlene Brunner, and David Lane, testified, relative to this issue, that the defendant traveled, via motor vehicle, from Providence, Rhode Island, to Columbus, Ohio, from the hours of 7:00 a.m. or 7:30 a.m. to 8:00 p.m. or 8:30 p.m., on July 18, 1996, and socialized with friends and relatives that evening at the residence of Charlene Brunner. The Court finds that if the defendant had traveled to Columbus, Ohio, in a motor vehicle, accompanied by Kyle Hazard and Dennis Marrow, as these witnesses had testified, then he would have had actual knowledge prior to the trial: that in the morning hours of July 18, 1996, a New Jersey State Trooper stopped the motor vehicle in which he was traveling on Route 80 in New Jersey for a traffic violation; that three black males, including himself, occupied this motor vehicle; and that the State Trooper issued a written warning to the driver of the motor vehicle, Kyle Hazard. Consequently, the evidence offered by Vieldhouse is not newly discovered or newly available since the trial. The defendant has not presented sufficient evidence for the Court to find that he was diligent in attempting to discover this testimonial and documentary evidence prior to the trial and the Court also finds that the evidence would have been discoverable prior to the trial with the exercise of due diligence by the defendant. Vieldhouse testified that the evidence he offered at the evidentiary hearing was discoverable by, and available to, the defendant if the defendant would have contacted any New Jersey State Police Barracks and provided the responding trooper with the date and approximate location of the traffic stop. Additionally, the Court finds that the testimonial and documentary evidence presented by Vieldhouse is not material to a determination of the issue for which it is offered and is not likely to change the verdict at a new trial, since Vieldhouse had no independent recollection of the subject motor vehicle stop and he was unable to identify Kyle Hazard, Dennis Marrow, or the defendant as any one of the three black male occupants of the subject motor vehicle. The evidence presented by Vieldhouse also is cumulative to the evidence presented at the trial, and the defendant's argument that "[a]lthough there is no new direct evidence establishing that [the defendant] was in the vehicle at the time of the stop, the only logical inference is that [the defendant] was in the vehicle" is not persuasive and is not dispositive of whether this evidence meets the requisite legal test that the Court is bound to apply. At the trial, the defendant presented evidence concerning his traveling from Providence, Rhode Island to Columbus, Ohio on July 18, 1996, via the testimony of witnesses as described herein. The Court finds that this cumulative evidence — as an example, the notation of three black males made by Vieldhouse — is unlikely to change the verdict at a new trial, and, therefore, does not warrant the Court's granting a new trial on the basis of the Vieldhouse evidence.
In applying the requisite legal test to the pertinent evidence presented by Stewart, Dean, Brunner, and Stevens, the Court finds that the evidence proffered by each witness is not newly discovered or newly available since the trial and likewise does not warrant the granting of a new trial. The defendant has submitted the evidence to support the allegation that during the evening hours of July 18, 1996, he was visiting with family and friends at the residence of Charlene Brunner, located in Columbus, Ohio. The evidence is neither newly discovered nor newly available as each witness and the subject of his or her testimony were known to the defendant prior to the commencement of the trial, and the record contains no evidence that these witnesses were unavailable to testify at the trial. The Court finds that this supposedly newly discovered evidence proffered by the defendant, although not developed until after trial, was available for use in his defense and could have been discovered prior to the trial with a minimum amount of due diligence, and in any event is clearly cumulative to the evidence presented by the defendant at the trial as outlined above. The Court also finds that the testimony of these witnesses is unlikely to change the verdict at a new trial and therefore does not warrant the Court's granting a new trial on the basis of said evidence.
In applying the requisite legal test to the evidence proffered by Ali, the Court finds that this evidence is newly discovered and newly available since the trial and is material to the issues presented during the trial. Ali testified at the evidentiary hearing that he did not make himself known or provide a witness statement to the City of Providence Police Department. Additionally, Ali testified that he did not contact the defendant or the defendant's counsel at any time prior to the trial and that he only came forward with his testimony when he learned of the defendant's motion for a new trial.
A crucial part of Ali's testimony relates to the three occupants of the maroon colored motor vehicle used in the murder of Andrews. Ali testified that he observed this motor vehicle two to three hours prior to the murder, and the defendant was not an occupant. Such a fact, if true, is not dispositive of whether the defendant murdered Andrews. Even if the motor vehicle were occupied by the three persons Ali named two to three hours prior to the murder, this fact does not preclude a new jury from making the plausible conclusion that the defendant entered the vehicle and joined the three named occupants during the intervening two or three hours prior to the murder. Such a conclusion would buttress rather than refute the testimony of Williams that he viewed four individuals in the motor vehicle at the time of the murder, and identified three of these individuals as Troy Lassiter, David Lassiter, and the defendant. For this reason, the Court concludes that such evidence would probably not change the verdict at a new trial.
Another critical part of Ali's testimony was that Williams was not walking with Andrews at the time of the murder and was not present at the murder scene at any time during the thirty-five to forty-five minutes Ali was allegedly in the area. Mi's credibility is seriously brought into question on this point because of the following: he was at least one block away from West Clifford Street at the time of the murder; he could not identify the individual who walked onto West Clifford Street because it was at night and the facial features of this person were obscured by the darkness; and, he viewed West Clifford Street through an overgrown vacant lot. Moreover, Muir identified Williams at the murder scene as depicted on the Nasberg video tape recording; and Cassidy testified that Williams was at the murder scene when he arrived and that at no time did he see Ali at or in the vicinity of the scene. The Court finds that the testimony of Ali on this point is not credible enough to afford a sufficient basis upon which to grant a new trial.
In applying the legal test to the seizure of the .45 and .22 caliber firearms and accompanying scientific evidence, the Court finds that this evidence is newly discovered and available to the defendant as the City of Providence confiscated these firearms on March 10, 1999. However, the fact that these firearms were seized from the premises of a Lassiter family member is not sufficient to justify this Court's granting a new trial. The Court has carefully considered the facts surrounding this seizure and the results of the scientific evidence, and finds, as the State has argued, that this evidence tends to confirm rather than refute the testimony of Williams. For example, Williams testified that he viewed and heard two firearms discharged in rapid succession, with one pistol having a smaller barrel and a softer report when discharged than the other. The testimony of Williams is corroborated by King who testified that the gun shots sounded like fireworks going off, and a police officer who testified at the trial that a .45 caliber semiautomatic pistol makes a louder report when discharged than a .22 caliber semiautomatic pistol. The Court finds that this newly discovered evidence would not probably change the verdict at a new trial, and therefore does not warrant this Court's granting a new trial.
From the above findings of fact and conclusions of law, the Court determines that the defendant has not presented sufficient evidence at the evidentiary hearing to meet his burden under the requisite legal test as this Court is bound to apply pursuant to Super. Ct. R. Crim. P. Rule 33 and as enunciated by our Supreme Court in State v. Brown, supra. and its progeny. Consequently, the defendant's Motion for a New Trial Based Upon Newly Discovered or Newly Available Evidence must be and is denied.