**STATE**

v.

**Chhoy HAK.**

No. 2006–156–M.P.

Supreme Court of Rhode Island.

Jan. 28, 2009.

Virginia McGinn, Office of the Attorney General, for Plaintiff.

Susan Iannitelli, for Defendant.

Present: WILLIAMS, C.J., GOLDBERG, FLAHERTY, SUTTELL, and ROBINSON, JJ.

**OPINION**

Justice FLAHERTY, for the Court.

On September 10, 2003 a Superior Court jury found the defendant, Chhoy Hak, guilty of four counts of first-degree child molestation in violation of G.L.1956 § 11–37–8.1 and two counts of second-degree child molestation in violation of § 11–37–8.3. The trial justice denied the defendant's motion for a new trial on October 6, 2003. Thereafter, the defendant was sentenced to a total of forty years imprisonment at the Adult Correctional Institutions, with twenty years to serve and twenty years suspended, with probation. The defendant did not file a timely notice of appeal; however, in March 2007, this Court granted the defendant's petition for a writ of certiorari. The defendant asks this Court to review certain evidentiary rulings that the trial justice made, his denial of the motion to pass the case, and his decision to include a flight instruction in the charge to the jury. For the reasons set forth in this opinion, the petition for certiorari is denied and the judgments of conviction are affirmed.

**I**

**Facts and Travel**

The two complainants in this case, Emily and Olivia, were three and five years old, respectively, when they moved to the United States from their native Cambodia.[1] The two young girls immigrated with their mother, Sarah, and the family initially settled in Fall River, Massachusetts, but soon moved to Providence. Shortly after she arrived in this country, Sarah began dating Hak, and eventually he moved in with the family. Emily and Olivia's biological father had died years earlier during the civil war in Cambodia, and defendant, at least for a time, assumed the father-figure role in the young girls' lives. In 1982, Sarah gave birth to the

---

1. The names of the two complainants and their mother are pseudonyms given to them by this Court to protect their privacy.

first of three children she would have by Hak, and the following year, the family moved to Florida. The family's stay was brief, however, and it returned to Rhode Island in 1985. Emily testified that they first stayed with relatives. By the summer of 1987, however, the family moved to Miller Avenue in Providence, where it remained until December 1987, when it relocated to Florida once again. In April 1989, the family moved back to Providence, this time residing on Ford Street.

Emily testified that Hak began to abuse her in 1987, when they lived on Miller Avenue. She said he fondled her breasts and touched her on the outside of her vagina. The abuse not only continued, but soon escalated beyond "fondling and touching" while they lived in Florida. Emily testified that by the time she had moved back to Rhode Island, Hak would "come into the room and take my clothes off and then he would still fondle the area. And he would put his penis in my vagina." She also testified that he put his finger and his mouth in her vagina and his penis on her anus.

Emily's older sister, Olivia, also testified that Hak abused her. She said that at first she enjoyed a fine relationship with Hak, but that once, when she was twelve years old, he grabbed her while she was cooking rice in the kitchen, took her into a bedroom, and forced her to engage in sexual intercourse with him.

The defendant also physically abused the young girls. Olivia testified: "Well, he hit me and I had really bad bruises on my legs," to the point where "[i]t was black and blue all over." She said that she informed her maternal grandfather of the abuse she was enduring. This disclosure eventually led to action by the Department of Children, Youth and Families (DCYF), which obtained custody of the girls, removed them from the home, and placed them in foster care. In June 1989, both Emily and Olivia provided statements to the police about the sexual abuse that they had endured. They were examined by Dr. Sarah Guzi of Rhode Island Hospital.

Around the same time, Hak moved by himself to the State of Washington. A grand jury returned an indictment against defendant in July 1992 that charged him with six counts of child molestation. However, by this point, Hak was out of the state and living with Sarah, who had followed him to the west coast two or three months after he left Providence. When Hak did not appear in the Superior Court for his arraignment on the felony charges, a warrant was issued for his arrest. In 2000, authorities arrested defendant in Washington and he was arraigned in Rhode Island in March that year.

The defendant's trial on the charged offenses began in September 2003. Both girls testified about the abuse that was visited upon them by defendant. Emily said that she was confused and in a great deal of pain when Hak abused her. She further testified that defendant told her not to tell anybody and that if she did, he would hurt her. She also said that Hak told her that "[i]t's all normal," and that "this should be done to a girl before they get married." Doctor Guzi testified for the state that she examined both girls in June 1989, and that her physical findings were consistent with the histories received from both girls.[2]

---

**2.** The state rested after Dr. Guzi's testimony. At this point, defense counsel moved for judgment of acquittal under Rule 29 of the Superior Court Rules of Criminal Procedure. Rule 29(a)(1) provides in pertinent part:

"The court on motion of a defendant or on its own motion shall order the entry of judgment of acquittal of one or more offenses charged in the indictment, information, or complaint, after the evidence on

The defendant testified in his own defense and he admitted that he struck Emily and Olivia to discipline them; however, he denied that he ever molested the girls. He said that he left for Washington in June 1989, which was shortly after the girls were removed from the home by DCYF. He testified that he did this so that Sarah could regain custody of their children. Although he testified that he was aware of allegations against him in 1989, he said that he was unaware of any sexual molestation charges until he was arrested in 2000. Hak testified that he believed the girls were in DCYF custody solely because of the physical abuse that they had alleged. He maintained that he and Sarah did not discuss Emily or Olivia during the years they resided together in Washington.

After closing arguments, defense counsel moved to pass the case because he contended that the trial justice had made comments during his closing argument that diminished him in the eyes of the jury, thereby prejudicing Hak. The trial justice denied the motion to pass the case and then instructed the jury on both first- and second-degree child molestation. These instructions included a detailed flight instruction. During a sidebar conference, defense counsel objected; he argued that he was unaware that the trial justice intended to instruct the jury on flight because the state did not request such an instruction. He argued that there

was scant evidence that Hak was on notice of the allegations against him when he left the state. Defense counsel contended that if he had been aware that the trial justice was going to include a flight instruction, then he may have argued the case differently to the jury.

After deliberating for a little over an hour, the jury returned a guilty verdict on all six counts. The defendant moved for a new trial; he argued that Emily and Olivia's testimony was not credible and a guilty verdict was not warranted in light of the evidence presented at trial. He asserted that there were inconsistencies in Olivia's testimony about which year she said she was abused and in Emily's testimony about when and to whom she disclosed the abuse. On October 6, 2003, the trial justice denied the motion for a new trial. He said that any inconsistencies in the girls' testimony were immaterial and that he would have found defendant guilty if the case had been tried before him without a jury. On December 8, 2003, the trial justice sentenced Hak to concurrent terms of forty years imprisonment on the first-degree child-molestation counts, with twenty years to serve and the balance suspended for a twenty-year probationary period, and thirty years imprisonment on the second-degree child-molestation counts, with fifteen years to serve, and the balance suspended for a fifteen-year pro-

---

either side is closed, if the evidence is insufficient to sustain a conviction of such offense or offenses. If a defendant's motion for judgment of acquittal at the close of the evidence offered by the State is not granted, the defendant may offer evidence without having reserved the right."
The trial justice granted the motion in part. He reduced the charges in counts 2 and 5 from first-degree to second-degree child molestation. G.L.1956 § 11–37–8.1 provides: "A person is guilty of first degree child moles-

tation sexual assault if he or she engages in sexual penetration with a person fourteen (14) years of age or under." Section 11–37–8.3 provides: "A person is guilty of a second degree child molestation sexual assault if he or she engages in sexual contact with another person fourteen (14) years of age or under." The trial justice granted the motion because the state had presented evidence only of sexual contact and not sexual penetration pertaining to these counts.

bationary period.[3] Defense counsel indicated to the Superior Court that he intended to appeal Hak's convictions. However, for unknown reasons, a notice of appeal was not properly filed. On March 23, 2007, this Court issued a writ of certiorari to review defendant's judgments of conviction for child molestation.

## II

## Analysis

The defendant raises three issues before this Court. He contends that the trial justice erred by: (1) allowing the jury to hear irrelevant and highly prejudicial testimony (2) denying the motion to pass the case after he criticized defense counsel during closing argument, thereby prejudicing him, and (3) including a flight instruction in the jury charge. Consequently, defendant asks this Court to vacate the judgments of conviction and remand the matter to the Superior Court. We will address each of these issues below.

**3.** On December 8, 2003, the hearing justice sentenced Hak from the bench as follows: forty years imprisonment, with twenty years to serve and the balance suspended on the first-degree child-molestation counts (counts 1, 3, 4, and 6) and thirty years imprisonment, with fifteen years to serve and the balance suspended on the second-degree child-molestation counts (counts 2 and 5). All sentences were to run concurrently. The judgments of conviction were entered on December 30, 2003; however, a thirty-year sentence on count six, with fifteen years to serve and fifteen years suspended was included, instead of the forty-year sentence, with twenty years to serve and twenty years suspended that the trial justice imposed from the bench. Pursuant to Rule 36 of the Superior Court Rules of Criminal Procedure, clerical mistakes in judgments "may be corrected by the [Superior Court] at any time of its own initiative or on the motion of any party." Rule 36 of the Superior Court Rules of Criminal Procedure. However, after a case is docketed in this

## A

### Evidentiary Rulings

During direct examination, the prosecutor asked Emily what was going through her mind while defendant sexually assaulted her. Defense counsel objected, based upon relevancy and Rule 403 of the Rhode Island Rules of Evidence. After a sidebar conference, the trial justice overruled the objection; Emily then answered, and said, "[c]onfusion, a lot of pain because it would hurt." The prosecutor then asked: "Did he say anything to you during these assaults that made you think something about them?" Defense counsel again objected, but he did not specify the grounds for his objection; the trial justice again overruled the objection. Emily responded: "He would say not to tell anybody, you know, not to tell anybody. And if I did, he would hurt me. And he said that this should be done to a girl before they get married. It's all normal."

The defendant contends that Emily's testimony concerning what he said to her during the assaults should have been ex-

Court, the error may be corrected with leave of this Court. *Id.* Such an error is considered an "illegal sentence" under Rule 35 of the Superior Court Rules of Criminal Procedure. An illegal sentence is "one which has been imposed after a valid conviction but is not authorized under law. It includes, *e.g.*, a sentence in excess of that provided by statute, imposition of an unauthorized form of punishment, a judgment that does not conform to the oral sentence." Rule 35 of the Superior Court Rules of Criminal Procedure, Reporter's Notes at 607. Although an illegal sentence may be corrected at any time, absent a motion and a decision by the Superior Court on this issue, this Court will not consider the legality or propriety of a sentence unless there are extraordinary circumstances. *State v. Brigham*, 638 A.2d 1043, 1046 (R.I.1994). This issue has not been addressed in the Superior Court and we do not believe that this case presents us with the requisite extraordinary circumstances.

cluded because it was both irrelevant and highly prejudicial. He maintains that the testimony was intended to anger and appall the jury. Also, he raises the argument, not raised at trial, that the testimony was inadmissible as a state-of-mind exception to the hearsay rule.

■ This Court's familiar raise-or-waive rule precludes us from considering issues at the appellate level that were not properly presented before the trial court. *State v. Bido*, 941 A.2d 822, 828–29 (R.I. 2008) ("It is well settled that a litigant cannot raise an objection or advance a new theory on appeal if it was not raised before the trial court."). Under this rule, "a litigant must make a timely and appropriate objection during the lower court proceedings before this Court will indulge the issue on appeal." *State v. Grant*, 840 A.2d 541, 546 (R.I.2004). "Moreover, we have cautioned that a general objection is not sufficient to preserve an issue for appellate review; rather, assignments of error must be set forth with sufficient particularity to call the trial justice's attention to the basis of the objection." *Union Station Associates v. Rossi*, 862 A.2d 185, 192 (R.I.2004) (citing *Grant*, 840 A.2d at 546–47 and *State v. Bettencourt*, 723 A.2d 1101, 1107–08 (R.I.1999)).

Defense counsel cited relevancy and prejudice as the grounds for the first objection, but he did not object to the second question with the sufficient particularity needed to preserve the issue for appeal. However, the prosecutor's second question followed a lengthy sidebar conference in which defense counsel anticipated the testimony that eventually was given in response to the second question, and indicated that it was both irrelevant and highly prejudicial. Therefore, we will consider

Hak's arguments on appeal as if the question had been objected to below with the requisite specificity.[4]

■ "All relevant evidence is admissible" under Rule 402 of the Rhode Island Rules of Evidence. Rule 401 of the Rhode Island Rules of Evidence defines "relevant evidence" as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." It is well settled in this state that "[d]ecisions about the admissibility of evidence on relevancy grounds are left to the sound discretion of the trial justice; this Court will not disturb those decisions on appeal absent an abuse of discretion." *State v. Grayhurst*, 852 A.2d 491, 505 (R.I.2004) (quoting *State v. Pena–Rojas*, 822 A.2d 921, 924 (R.I.2003)).

■ The defendant contends that Emily's testimony lacked relevance because it was unrelated to the elements of first-degree child molestation. Even though he concedes that the state is not limited in its direct examination of witnesses to questions directly related to proving its prima facie case, Hak argues that Emily's perceptions were irrelevant to the proof of the offense. Therefore, it is his contention that the trial justice should not have allowed the prosecutor to ask: "Did he say anything to you during these assaults that made you think anything of them?" However, the trial justice observed that defense counsel had indicated in his opening statement that his client would deny the allegations that had been made against him. The trial justice said that the jury would have the burden of assessing the credibility of the various wit-

---

4. However, we will not address Hak's argument that Emily's statement was not properly admissible as a state-of-mind exception to the hearsay rule because the only grounds raised below to either question were relevancy and unfair prejudice.

nesses who would testify. Further, Hak virtually concedes in his brief to this Court that Emily's statement about what he said to her may have demonstrated that the fact of penetration was more probable—the very essence of relevant evidence. Therefore, we are of the opinion that the trial justice did not abuse his discretion when he allowed the question.

Even relevant evidence must be viewed through the prism of Rule 403.[5] Hak argues that notwithstanding the relevancy of Emily's testimony, it nonetheless should have been excluded pursuant to that rule because its probative value was substantially outweighed by the danger of unfair prejudice. He contends that the question was intended to elicit a response that would appall the jury.[6] Under Rule 403, relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice to the defendant. However, this Court has said that "the discretion to exclude evidence under Rule 403 must be exercised sparingly." *State v. Patel*, 949 A.2d 401, 412 (R.I.2008) (citing *Wells v. Uvex Winter Optical, Inc.*, 635 A.2d 1188, 1193 (R.I. 1994)). "It is only evidence that is marginally relevant and enormously prejudicial that must be excluded." *Id.* at 412–13 (citing *State v. Silvia*, 898 A.2d 707, 717 (R.I.2006)).

In *Patel*, this Court held that a 9–1–1 recording that portrayed the agonizing screams of a murder victim's family just moments after he was killed was not so prejudicial as to overcome its probative value. *Patel*, 949 A.2d at 413. In this case, in light of Emily and Olivia's testimony in which they discussed the sexual abuse they suffered at the hands of a man they at one time viewed as a father figure, we do not believe that the statement in question was likely to inflame the passions of the jurors any more than other testimony that they heard. Further, even if Emily's testimony angered the jury, we do not believe that her statement was "marginally relevant and enormously prejudicial." *Id.* In fact, it was "no more [prejudicial] than that which 'is always sustained by the introduction of relevant evidence intended to prove guilt.' " *State v. DeJesus*, 947 A.2d 873, 884 (R.I.2008) (quoting *Silvia*, 898 A.2d at 717). As we have said, "[a]ll evidence tending to prove guilt in a criminal trial is prejudicial to a defendant. * * * [N]o doctrine in the law * * * is designed to insulate [a] defendant from relevant truths[,] * * * even if such truths might lead the jury to draw less favorable inferences concerning [a] defendant than if they were not exposed." *Id.* (quoting *State v. Oliveira*, 774 A.2d 893, 924 (R.I.2001)). Therefore, we are of the opinion that the trial justice did not abuse his discretion when he permitted the prosecutor to inquire of Emily what Hak said to her during the abuse.

**B**

**Motion to Pass the Case**

Hak argues that the trial justice erred because he refused to pass the case after he made what Hak claims were improper comments to defense counsel in the presence of the jury that prejudiced Hak.[7]

---

5. Rule 403 of the Rhode Island Rules of Evidence provides: "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

6. We note that there was no motion to pass the case nor was a curative instruction requested after Emily answered the question.

7. "In Rhode Island, the terms 'motion to pass the case' and 'motion for a mistrial' are synonymous." *State v. Grant*, 946 A.2d 818, 824

During his closing argument, defense counsel suggested that the grand jury proceedings were conducted with a degree of impropriety.[8] The trial justice sustained the prosecutor's objection to these remarks. However, defense counsel then said to the jury, "I submit to you that the Grand Jury did not function the way that it should." After another objection from the prosecutor, the trial justice said: "[Defense counsel], please don't comment on the Grand Jury's actions." The attorney then indicated to the jury that he did not believe that his client understood everything that was asked of him while he was on the witness stand. He commented:

"Wouldn't it be nice if I could tell you that Mr. Hak is an articulate, college educated well-spoken man. I can't do that. He did get on the stand and he did do his best. He didn't appear to understand everything that was asked of him. He didn't appear to understand everything that I asked of him. I don't think he appeared to understand everything that [the prosecutor] asked of him."

There was no objection from the prosecutor to these comments. However, the trial justice *sua sponte* cautioned defense counsel not to inject his own personal beliefs into the matter. The attorney then explained to the jury, "I don't mean to give you my personal opinion. I'm submitting to you what conclusions I think you can draw from the evidence."

"It is well settled that a decision to pass a case and declare a mistrial are matters left to the sound discretion of the trial justice." *State v. Barkmeyer,* 949 A.2d 984, 1007 (R.I.2008) (quoting *State v. Suero,* 721 A.2d 426, 429 (R.I.1998)). We often have said that because the trial justice has a "front row seat" during the trial, he or she "can best determine the effect of the improvident remarks upon the jury." *State v. Figueroa,* 673 A.2d 1084, 1091 (R.I.1996) (quoting *State v. Tempest,* 651 A.2d 1198, 1207 (R.I.1995)). Therefore, the decision of a trial justice on whether to pass a case is entitled to great deference, and this Court will not disturb his or her ruling absent clear error. *Patel,* 949 A.2d at 414–15; *State v. Brown,* 528 A.2d 1098, 1103 (R.I.1987).

"Improper comments by a trial justice may be grounds for a new trial." *State v. Jackson,* 752 A.2d 5, 11 (R.I.2000) (citing *State v. Wiley,* 567 A.2d 802, 805 (R.I.1989)). However, after reviewing the record, we do not believe that the trial justice's comments in this case were sufficiently prejudicial to warrant a mistrial. First, as the trial justice noted when he denied the motion to pass the case: "Yes the Court did stop you. It didn't, in this Court's opinion berate you. It did nothing more than admonish you mildly, that you were to keep statements of your opinion out of your closing arguments." Second, as this Court has noted, "not every admonition made by the trial justice in the presence of the jury to indicate displeasure

(R.I.2008) (quoting *State v. O'Connor,* 936 A.2d 216, 218 n. 2 (R.I.2007)).

8. Defense counsel said that Olivia was confused during her testimony before the grand jury about the dates of the abuse. He remarked to the jury:

"I submit it is equally plausible that the prosecutor realized before the Grand Jury, I can't Indict somebody for something that happened in Florida, and I'm not going to consider whether or not the evidence is accurate, or whether or not I'm getting something that's truthful. I'll go out and get the date straightened out and I'll bring [Olivia] before the Grand Jury and get the Indictment I'm here to obtain.

"I'm not suggesting this is done out of some evil purpose. This is a very difficult business. But it was wrong. It was improper."

with counsel is grounds for reversal." *State v. D'Alo*, 477 A.2d 89, 92 (R.I.1984) (quoting *State v. Mercier*, 415 A.2d 465, 468 (R.I.1980)). Third, immediately following closing arguments, the trial justice instructed the jury that (1) it alone was to judge the credibility of the witnesses who testified (2) he had no opinion about the case and that if it thought he expressed his opinion in any way during the course of the proceedings, those thoughts must be ignored, and (3) the statements of the attorneys during closing arguments were not evidence. In light of the foregoing, and considering our great deference to a trial justice's ruling on whether to pass a case, we do not believe that the trial justice erred when he denied the motion for a mistrial.

## C

### Flight Instruction

■ Lastly, defendant contends that the trial justice erred when he included a flight instruction in his charge to the jury. Hak maintains that because he was unaware of the pending charges against him, a flight instruction was not warranted.

■ It is well settled in this jurisdiction that relevance of flight "may be introduced as a circumstance bearing on the question of guilt that may be presented to the jury for [its] consideration." *State v. Cooke*, 479 A.2d 727, 732 (R.I.1984) (citing *In re Caldarone*, 115 R.I. 316, 326, 345 A.2d 871, 876 (1975)). In *Cooke*, this Court adopted the four-link chain of inferences concerning the relevance of flight as evidence of a defendant's guilt that had been used in *United States v. Myers*, 550 F.2d 1036, 1049 (5th Cir.1977). *Cooke*, 479 A.2d at 732–33.

> "The relevancy of flight as evidence of a defendant's guilt, however, depends on the degree of confidence with which a chain of inferences can be followed: (first inference) something the defendant did led him to flee, (second inference) he fled out of consciousness of guilt, (third inference) his consciousness of guilt derived from consciousness of guilt concerning the crime charged, and (fourth inference) his consciousness of guilt concerning a crime charged reflects actual guilt of the crime charged." *Id.*

■ Hak objected only to the mere giving of the flight instruction; he did not articulate any objection to the substance of the trial justice's charge.[9] In *State v. Go-*

9. The trial justice's instruction was as follows:
"In this matter there has been some evidence that Mr. Hak left the State of Rhode Island shortly after the commission of the alleged last offense. A person who flees from the scene of a crime or hides after a crime has been committed may do so for a variety of reasons. Not all of which are consistent with the consciousness of guilt of that person. Flight or concealment does not create a presumption of guilt, and it would be improper for you as the jury to presume that Mr. Hak is guilty solely because he fled or concealed himself. Flight, as we may call it, may be motivated by factors entirely consistent with innocence.
"On the other hand, you may consider flight or concealment as a circumstance which does tend to indicate feelings of guilt,

and these feelings may give rise to the inference that the feelings are evidence which tend to show actual guilt of the crime which Mr. Hak is being charged with. Before doing so, however, you should consider the following analysis. Ask yourself the following questions: Did Mr. Hak do something that caused him to flee or conceal himself? Secondly, did Mr. Hak flee out of a consciousness of guilt, or was there some other reason for his actions? Third, if there was a consciousness of guilt, did that consciousness of guilt arise out of the specific crime with which Mr. Hak is being charged. And lastly, did that consciousness of guilt reflect actual guilt of the crime that's being charged.
"In considering these factors, it's important that you look at the time which has

*mez*, 848 A.2d 221 (R.I.2004), this Court explained that a trial justice's decision to give a flight instruction depends upon whether "[a] reasonable jury could infer consciousness of guilt" from a totality of evidence produced at trial. *Id.* at 230–31 (quoting *State v. Correia,* 707 A.2d 1245, 1249 (R.I.1998)). "The flight instruction merely asks the jurors to consider whether defendant undertook certain actions with a consciousness of guilt; the instruction does not require that they infer a consciousness of guilt from the flight alone." *Id.* at 231. "Thus, a trial justice's decision to administer a flight instruction will not be disturbed unless there is an obvious paucity of evidence tending to allow a reasonable juror to infer guilt." *State v. Mendoza,* 889 A.2d 153, 163 (R.I.2005).

In this case, the indictment alleged that the last act of abuse perpetrated by Hak occurred between April and June 7, 1989. DCYF began investigating in June 1989 and it removed the girls from the home they shared with defendant shortly thereafter. Hak testified that he knew the girls had been removed from the home and that he moved to Washington shortly after this point so that Sarah could regain custody of their children. He said that he was not aware that the girls had talked to police. He was unclear in his testimony about whether or not he knew of the child molestation allegations against him when he left the jurisdiction.[10]

Hak's argument that the flight instruction was not warranted because he was unaware of the pending charges against him when he left for Washington misses the mark. The critical factor to the consideration of evidence of flight is whether the totality of the evidence creates an inference that the defendant had knowledge that he is fleeing from the specific crime charged. *Brown,* 528 A.2d at 1101–02. The more immediate in time the flight is to the crime charged, the stronger the inference. *Id.* There is no requirement that an arrest warrant had been issued or that a defendant is aware that charges are actually pending at the time of flight. *See Gomez,* 848 A.2d at 231.

Unlike other cases in this state in which a flight instruction was given, Hak did not flee from the scene of a crime. *See, e.g., State v. Perry,* 725 A.2d 264 (R.I.1999); *State v. Reyes,* 705 A.2d 1375 (R.I.1998). However, in this case, it seems clear that the removal of the girls from the home by DCYF was a "triggering event" that caused defendant to leave the jurisdiction. Thus, we are of the opinion that based upon the totality of evidence at trial, a reasonable jury could conclude fairly that Hak left the state because he was aware that he had done something illegal and that the law was beginning to catch up to him. Therefore, because a reasonable jury could infer consciousness of guilt from the totality of evidence presented at trial, we conclude that the trial justice did not err when he included a flight instruction in his charge to the jury.

elapsed between the commission of the crime and the actions by Mr. Hak in attempting to flee or conceal himself in determining whether or not Mr. Hak's reasons for fleeing or concealing was because of the commission of a crime. If you find evidence of flight or concealment, you should consider and weigh such evidence, along with all other evidence in this matter, and give it such weight as you think it is fairly entitled to receive."

10. During direct examination Hak testified that he first heard of the allegations in 1989 and that he was not arrested when he first learned of the allegations against him. However, on cross-examination he testified that he did not learn of the girls' allegations until 2000.

## III

### Conclusion

For the reasons stated in this opinion, the petition for certiorari is denied and the judgments of conviction are affirmed.